Ransom v. The State.

ERNEST RANSOM *v.* THE STATE.

| | |
|---|---|
| 116 | 355 |
| f117 | 243 |
| f117 | 523 |

(*Nashville.*   December Term, 1905.)

1. **GRAND JURY.** Objection to formation of, must be seasonably made, and, after indictment, can only be made by plea in abatement, and not by mere motion to quash.

An objection to an indictment by a negro defendant in a criminal case on the ground that negroes were excluded from the grand jury on account of their race and color cannot be made by a mere motion to quash the indictment, but the question must be seasonably made by plea in abatement, duly verified and sustained by competent evidence, and the question is not seasonably made where the defendant was arrested during vacation, bound over to await the action of the grand jury at the next ensuing term, and did not interpose his objection until the trial day, six weeks after the finding of the indictment and after a special panel had been called for by defendant and granted. (*Post, pp.* 359-364.)

United States constitution cited and construed:   Fourteenth amendment.

Cases cited and approved: United States v. Gale, 109 U. S., 65; Agnew v. United States, 165 U. S., 42; United States v. Richardson, 28 Fed. Rep., 65.

2. **TRAVERSE JURY.** Objection that negroes are excluded from trial panel is not sustained, when.

The contention by a negro defendant in a criminal case that he is denied the equal protection of the laws for the reason that the names of the panel, array or venire for the trial jury were drawn from a jury box from which the names of negroes had been excluded on account of their race and color, is not sustained by affidavits to the effect that the affiants had not seen or heard a colored man called to serve on a jury for a period of years. (*Post, pp.* 364-366.)

Ransom v. The State.

3. **SUPREME COURT PRACTICE.** Ruling of trial judge on facts not reviewed, when.

Where a bill of exceptions fails to state, as required by the well-settled rules of this court, that it contains all of the evidence heard by the trial judge on any plea or motion presenting disputed or controverted facts, the correctness of the judge's ruling will not be reviewed. (*Post, pp.* 366, 367.)

4. **MURDER.** Verdict for, supported by the facts.

A verdict of guilty of murder in the second degree, and fixing the punishment of defendant at twenty years' confinement in the penitentiary, is abundantly sustained by the facts set out in the opinion. (*Post, pp.* 357-359.)

FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson County.—W. M. HART, Judge.

R. L. MAYFIELD, for Ransom.

ATTORNEY-GENERAL CATES, for the State.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff in error was convicted in the criminal court of Davidson county of murder in second degree for the unlawful killing of one Horace Dozier, and sentenced to the State prison for a term of twenty years. He has appealed in error. The only question made on the appeal is that the prisoner in his trial was denied the

equal protection of the laws guaranteed to him by the fourteenth amendment to the federal constitution. It is proper, however, before entering upon an examination of the legal question, to make a brief statement of the facts.

It is shown by the record that the killing occurred in a negro saloon near the corner of Cedar and Cherry streets in the city of Nashville. The plaintiff in error and other negroes were engaged in a game of cards at a table in the rear of said saloon when one Yates, another negro, came into the room and began to guy the plaintiff in error, whereupon the latter arose, threatening to kill Yates if he did not let him alone. While these parties were engaged in an angry colloquy, a negro employee of the saloon interposed, and thereupon Yates retired. About this time, the deceased, Horace Dozier, a young negro, perhaps about 20 years old, remarked to plaintiff in error: "Sit down, you are just checking"—meaning that the defendant was bluffing; whereupon the plaintiff in error said: "You think I am checking. I will show you whether I am or not;" and, suiting the action to the word, he immediately struck the deceased on the forehead, whereupon the deceased returned the blow with his fist. The two clinched, and wrestled with each other towards the wall of the house. The deceased at this point broke away from the prisoner, and, holding his hand to his left side, ran out through the barroom, and, when he was about to pass through a set of swinging doors, the plaintiff in error, who was in pursuit, caught hold of the deceased, and, turning him around,

stabbed him twice in the breast. The deceased was taken to the city hospital where he shortly afterwards died. The prisoner, after stabbing the deceased, coolly wiped the blood from his knife upon his trousers, deposited it in his pocket and made his escape, but was arrested within about twenty-four hours and placed in jail. While the parties were about the same height, it appears that there was a disparity in their weight; the plaintiff in error weighing probably twenty or twenty-five pounds more than the deceased.

The theory of the defendant was that he had committed the act in self-defense. He claimed that while he and others were at the table, and after the controversy with Yates had subsided, the deceased, who was standing behind him, cursed him, and when the defendant looked around, the deceased struck him a severe blow in the mouth, and was in the act of following it up with another blow, but was prevented by doing so by his foot slipping; that the defendant then arose and began to defend himself from the assault made upon him by the deceased. He further insisted that the deceased was a man of equal strength with himself, and that he only used sufficient force to repel the threatened violence on the part of the deceased. The defendant also insisted the entire fight occurred in the poolroom, and that he did not pursue the deceased out to the front door of the barroom. The record, however, shows that he is not only contradicted in this statement by the witnesses for the State, but also by several of his own witnesses. The theory of

Ransom v. The State.

self-defense is not made out upon the record, and the verdict of the jury was well warranted by the facts disclosed.

It is not insisted there is error in the charge of the court or in the admission or exclusion of evidence, nor is the guilt of the defendant seriously controverted on this appeal; but the whole contention made in this court is that the plaintiff in error was denied the equal protection of the laws on his trial in the court below. The questions now sought to be made are predicated upon the refusal of the trial judge to sustain a motion interposed on behalf of the plaintiff in error to quash the indictment and set aside the panel, for the alleged reason that negroes had been excluded from the jury box on account of their color. The facts necessary to be noticed to present the question are as follows:

The murder was committed on the 1st of August, 1905, and within twenty-four hours, the plaintiff in error was arrested and bound over to the next term of the circuit court which convened on September 4, 1905. On the the first day of the court, to wit, September 4th, the court selected from the venire a grand jury to serve during the ensuing September term, 1905. On the 8th of September, 1905, the grand jury returned a true bill against the plaintiff in error, charging him with the crime of murder in the first degree. Thereafter the defendant demanded a special panel and on the 21st of October, 1905, the court ordered that the jury box be brought into open court and a panel drawn therefrom to

be summoned by the sheriff to appear October 24, 1905, on which date the case had been set for trial. It is worthy of remark that up to this time no motion had been interposed on behalf of the prisoner to quash the indictment or to challenge the legality of either the grand jury that indicted him or the names drawn from the jury box from which the panel for his trial was to be selected. However, on October 24, 1905, the day set for the trial of the cause, the plaintiff in error through his counsel presented the following motion in writing to quash the indictment, viz.: "Now comes the defendant in his own proper person, and moves the court to set aside and quash the indictment against him because the jury commissioners appointed in accordance with the acts of 1901 of the State of Tennessee, that selected the grand jury which found and presented said indictment, selected no person or persons of color or African descent to serve on said grand jury, but, on the contrary did exclude from the list of persons, to serve as such grand jurors, all colored persons, or persons of African descent known as 'negroes,' because of their race and color; and that said grand jury was composed exclusively of persons of the white race, while all persons of the colored race, or persons of African descent known as 'negroes,' although consisting and constituting one-third of the population of Davidson county, according to the federal statistics of 1900, and although otherwise qualified to serve on such grand jury, were excluded therefrom on the ground of their race and color, and have been so ex-

cluded from serving on any jury for many years, which is a discrimination against the defendant, since he is a person of color and of African descent known as a negro, and that such discrimination is a denial to him of the equal protection of the laws and of his civil rights as guaranteed by the fourteenth amendment to the federal constitution. The act of the jury commissioners, in denying him the equal protection of the law, as guaranteed by the amendment above referred to, is the act of the State of Tennessee in denying to him the equal protection of the law; all of which he is ready to verify."

The trial judge overruled this motion, which motion is now made the basis of the first assignment of error. We are of the opinion that the ruling of the trial judge was correct for the following reasons:

(1)   The indictment was in all respects regular on its face, and could not be invalidated on a mere motion to quash by objections presented to the constitution of the grand jury. Under the practice in this State, such extraneous matters lying beyond the four corners of the indictment should have been presented by a plea in abatement duly verified and sustained by competent evidence.

(2)   The objection to the formation of the grand jury was not seasonably interposed.

It was held by the supreme court of the United States in *Agnew v. United States*, 165 U. S., 42, 17 Sup. Ct., 235, 41 L. Ed., 624, that where the indictment was returned against the defendant December 12, 1895, and on

December 17, 1895, he was permitted to file a plea in abatement, the court held that such a plea was too late, for the reason that the defendant had not challenged the competency or legality of the grand jury at the earliest possible moment. Mr. Chief Justice Fuller, in the midst of his opinion, said: "Such a plea," referring to a plea in abatement, "must be pleaded with strict exactness. . . . Dr. Wharton lays it down that the material irregularities in selecting and impaneling a grand jury which do not relate to the competency of individual jurors may usually be objected to by challenge to the array, or by motion to quash, or by plea in abatement; that the question of the mode in which such objections are to be taken, largely depends upon local statutes, but that certain rules may be regarded as generally applicable. One of these rules is that the defendant must take the first opportunity in his power to make the objection. Where he is notified that his case is to be tried before the grand jury, he should proceed at once to take exception to its competency, for, if he lies by until a bill is found, the exception may be too late; but where he has had no opportunity of objecting before bill is found, then he may take advantage of the objection by motion to quash, or by plea in abatement. The latter in all cases of contested fact being the proper remedy. *United States v. Gale,* 109 U. S., 65, 3 Sup. Ct., 1, 27 L. Ed., 857.

"Another general rule is that for such irregularities as do not prejudice the defendant, he has no cause for

complaint and can take no exception.  *United States v. Richardson* (C. C.), 28 Fed., 65."

The court continued: "The original venire was issued November 18th.  The second venire was issued December 2, 1895.  The court opened December 3, 1895, and the indictment was returned December 12th, yet defendant did not file his plea in abatement until December 17th.  The plea does not allege want of knowledge, nor want of threatened prosecution on the part of defendant, nor want of opportunity to present his objection earlier, nor assigned any ground why exception was not taken or objection made before; and moreover, the plea is fatally defective in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such conclusion, nor does the record exhibit any such.  Bishop's New Criminal Procedure, section 877."

Applying the rule announced in that case to the facts herein, we find that the plaintiff in error was arrested on the 2d day of August, 1905, and bound over to the criminal court of Davidson county to await the action of the grand jury, yet with notice of the fact that his case would be investigated at the ensuing September term, he takes no step to object to the formation of the grand jury, for the reason that negroes were excluded therefrom, and no objection in fact was ever interposed until October 24th, the day set for his trial, which was six weeks after the finding of the indictment against him.

It, further appears that during this intervening period between the finding of the indictment and the day set for the trial, the plaintiff in error asked that a special panel be summoned for his trial.  For these reasons, we are of opinion that the motion to quash the indictment was properly overruled by the trial judge.

The trial court then proceeded to impanel a jury when one Benzine was qualified as a competent juror and accepted by the State.    He was challenged by counsel for the plaintiff in error because the jury commissioners who placed the names in the jury box from which this juror was drawn excluded from that box the names of colored men.   The trial court, however, ruled that no such fact appeared, and the challenge was insufficient and the juror Benzine was directed to take a seat in the jury box.   Counsel for plaintiff in error continued to challenge the remaining jurors as they were called and accepted by the State, but, for the reasons already stated, his challenge was overruled by the trial court.

It appears, however, that after said. jury had been selected, but before it was sworn, the plaintiff in error, by his counsel, interposed the following motion, viz. :

"Now comes the defendant in his own proper person and moves the court to set aside and quash the panel, array, or venire drawn from the jury box on the 21st day of October, 1905, from which a jury is to be drawn, to try this cause, because the box from which the panel, array, or venire was drawn contained no names of per-

sons of color or African descent; but, on the contrary, the names of colored men, or men of African descent, known as 'negroes,' were not placed in the box by the jury commissioners because of their race or color, and that the panel, array, or venire is composed exclusively of white persons; while all persons of the colored race, or of African descent known as 'negroes,' although about one-third of the population of Davidson county, and otherwise qualified, were excluded therefrom on account of their race or color, which is a discrimination against the defendant, since he is a person of color and of African descent known as a 'negro,' and such discrimination is a denial to him of the equal protection of the law and of his civil rights guaranteed by the fourteenth amendment to the federal constitution. The act of the jury commission in denying him the equal protection of the law, as guaranteed by the amendment referred to, is the act of the State of Tennessee in denying to him the equal protection of the law. All of which he is ready to verify.

"ERNEST RANSOM.

"Sworn to before me, October 24, 1905. R. Hailey, D. C."

In support of this motion, counsel for the plaintiff in error submitted nine affidavits of colored citizens of Davidson county. The following affidavit of J. C. Napier is a fair specimen of the matter contained in the remaining affidavits: "Affiant J. C. Napier makes oath in due form of law that he is a colored citizen, house-

holder, and freeholder of the county of Davidson, State of Tennessee; that for the past thirty years he has been a practicing lawyer at the Nashville bar in good standing; that in his practice he is frequently in the criminal courtroom at Nashville, and during a period covering the past ten or twelve years he has not known, heard, or seen a colored man called as a juror, grand or petit, in said court; that he himself has never been summoned to serve on said juries; that to the best of his knowledge, information and belief, there are at least 6,000 colored citizens of Nashville, Davidson county, Tennessee, who are competent to serve as jurors."

W. H. Hodgkins, colored, in his affidavit, in addition to the facts stated by J. C. Napier, said that he "was present in the courtroom when the jury in this case was made up and no colored man was offered or called as a juror in this case."

There was no other or different character of testimony offered in support of the motion to discharge the panel. The trial judge overruled the motion.

We are of the opinion that the action of the trial judge was correct for the following reasons: (1) That the bill of exceptions fails to state, as required by the rules of this court, that it contains all the evidence heard by the trial judge on the motion to discharge the panel. The established rule of practice requires that it shall affirmatively appear from the bill of exceptions that it contains all the evidence heard by the trial judge on any plea or motion presenting disputed or controvert-

Ransom v. The State.

ed facts.    (2)    It does not appear from the nine affidavits submitted in support of the motion that colored men were excluded from the jury box on account of their color, race, or previous condition of servitude.    It only appears from said affidavits that the affiants during the period mentioned by them, had not seen or heard a colored man called to serve on the jury.

The judgment of the lower court must therefore be affirmed.