Chairs v. State.

WASH CHAIRS *v.* STATE.

'(*Jackson.*    April Term, 1911.)'

1. LARCENY.   Evidence sufficient to sustain a conviction of.
The evidence is stated and held to be sufficient to sustain a conviction of larcency.   (*Post, pp.* 634, 635, 648.)

2. INDICTMENT.   Constitution of grand jury cannot be questioned by motion to quash, but by plea in abatement.
The constitution of the grand jury cannot be questioned by motion to quash the indictment, and can only be assailed by a plea in abatement.   (*Post, pp.* 635-642, 645-648, and especially 640.)

Cases cited and approved: Bennett v. State, M. & Y., 133, 135; State v. Duncan, 7 Yerg., 271, 275; State v. Bryant, 10 Yerg., 527; Jetton v. State, Meigs, 192; State v. Baker, 4 Humph., 12; Jones v. State, 6 Humph., 435; State v. Cole, 9 Humph., 628; State v. Dines, 10 Humph., 512; State v. Wills, 11 Humph., 222; State v. Willis, 3 Head, 157; King v. State, 3 Heisk., 148, 153; McTigue v. State, 4 Bax., 314; State v. Deason, 6 Bax., 511; State  v. Swafford, 1 Lea, 274; State v. Maddox, 1 Lea, 671; Wallace v. State, 2 Lea, 29, 31; Epperson v. State, 5 Lea, 293; Dyer v. State, 11 Lea, 509; State v. Jackson, 2 Shannon's Cases, 611; State v. Martin, 3 Shannon's Cases, 479; Turner v. State, 89 Tenn., 547, 558, 559; Ramson v. State, 116 Tenn., 355, 361; Rivers v. State, 117 Tenn., 235; Pennel v. State, 122 Tenn., 622; Tarrance v. Florida, 188 U. S., 519, quoting from a Florida case citing and reviewing many other Florida cases, as appears on pages 646-648 in the opinion.

3. SAME.   Motion to quash indictment is analogous and equivalent to a demurrer, but the trial court may require a regular and formal demurrer, or plea in abatement.
A motion to quash the indictment is analogous to an informal demurrer, and in practice is generally treated as equivalent

Chairs v. State.

to a demurrer, though not so imperative as a demurrer in due form, as the trial court may in its discretion refuse to act upon the motion, and require the defendant to file a regular and formal demurrer, stating in detail the grounds of objection, or may require a plea in abatement in a proper case for it. (*Post, pp.* 638, 639.)

Cases cited and approved: Ransom v. State, 116 Tenn., 355; Palmer v. State, 121 Tenn., 465, 490.

4. **PLEA IN ABATEMENT. Verification must be positive, and state that the plea is true in substance and fact; otherwise, it is a nullity.**

The affidavit verifying a plea in abatement must be positive as to the truth of every fact stated in the plea, and should leave nothing to be collected by inference. It must state that the plea is true in substance and fact. In the absence of such affidavit, the plea may be treated as a nullity. (*Post, pp.* 642, 643.)

Code cited and construed: Sec. 4622 (S.); sec. 3611 (M. & V.); sec. 2901 (T. & S. and 1858).

Acts cited and construed: Acts 1789, ch. 1; Acts 1794, ch. 1, sec. 26.

Cases cited and approved: Grove v. Jenkins, 9 Yerg., 10; Settle v. Settle, 10 Humph., 504; Bank v. Jones, 1 Swan, 391; Baker v. Compton, 2 Head, 471; Trabue v. Higden, 4 Cold., 623, 624; Wrompelmeier v. Moses, 3 Bax., 467, 470; Cheatham v. Pierce, 89 Tenn., 668, 678; Armstrong v. State, 101 Tenn., 389, 391.

5. **SAME. Same. Example of insufficient verification.**

The verification of a plea in abatement, signed by the defendant, is insufficient where it is in these words: "Subscribed and sworn to before me this 2d day of June, 1910," and signed "Wm. Creagan, Notary Public." So, a verification upon "information and belief" is bad. (*Post, pp.* 642, 643.)

Cases cited and approved: Bank v. Jones, 1 Swan, 391; Trabue v. Higden, 4 Cold., 620; Freidlander v. Pollock, 5 Cold., 490, 495, 496; Cheatham v. Pierce, 89 Tenn., 668, 678.

6. **SAME.** To indictment assailing constitution of grand jury must exclude all legal intendments against it, and must appear to be filed at earliest possible time.

A plea in abatement to an indictment, assailing the constitution of the grand jury finding and returning the same as a true bill, must exclude, by proper allegations and averments, every legal intendment or conclusion that otherwise might be made against it by the court. It must appear from its averments to have been filed at the earliest possible time; and if the want of an opportunity to challenge the panel is an element in the right to maintain the plea, the existence of such want of opportunity must be negatived. (*Post, p.* 644.)

Cases cited and approved: Ransom v. State, 116 Tenn., 355; Rivers v. State, 117 Tenn., 235; Pennel v. State, 122 Tenn., 622, 631.

7. **SAME.** Same. To indictment upon the ground that negroes were excluded from the grand jury comes too late, when; case in judgment.

A plea in abatement to an indictment against a negro, assailing the constitution of the grand jury finding and returning the same as a true bill, upon the ground that the jury was composed wholly of whites to the exclusion of negroes, was filed too late, where it was filed nine days after the return of the indictment, which was returned fourteen days after the constitution of the grand jury summoned upon a *venire* the day before its constitution, and contained no fact or statement showing why it had not been offered earlier, or why no earlier objection had been made to the constitution of the grand jury. (*Post, pp.* 643-645.)

See citations under headnote 6.

Chairs v. State.

8. **SAME.   Must possess the highest degree of certainty, and be most strictly construed.**

The general rule is that greatest strictness prevails in the construction and application of pleas in abatement; and they must possess the highest degree of certainty known to the law in every particular.   (*Post, p.* 644.)

Cases cited and approved:   Grove v. Campbell, 9 Yerg., 7, 10; State v. Bryant, 10 Yerg., 527; Baker v. Compton, 2 Head, 471; Stephens v. Gilbert, 1 Shannon's Cases, 663, 666; Jackson v. State, 2 Shannon's Cases, 611; Dyer v. State, 11 Lea, 509, 512 (and citations); Ward v. State, 102 Tenn., 724; Smartt v. State, 112 Tenn., 539, 546; Ransom v. State, 116 Tenn., 355; Rivers v. State, 117 Tenn., 235; Pennel v. State, 122 Tenn., 622, 631.

9. **INDICTMENT.   Proof to sustain motion to quash indictment after it has been properly overruled is properly refused.**

A request for permission to offer proof to sustain a motion to quash an indictment was necessarily idle and useless, and was therefore, properly refused, where it was made after the motion had been properly overruled.   (*Post, pp.* 645-648.)

Cases cited, distinguished, and approved:   Carter v. Texas, 177 U. S., 442; Layton v. Missouri, 187 U. S., 356; Insurance Co. v. McGrew, 188 U. S., 291; Tarrance v. Florida, 188 U. S., 519 (and citations); Hulbert v. Chicago, 202 U. S., 275.

FROM SHELBY.

Appeal from the Criminal Court of Shelby County.— Jno. T. Moss, Judge.

H. M. BOMAR, for Chairs.

ATTORNEY-GENERAL CATES, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

Plaintiff in error was indicted in the criminal court of Shelby county for larceny from the person of Mrs. A. L. Lovelace. He was convicted and sentenced to serve a term of five years in the State penitentiary, under our statute upon that subject, and has appealed to this court and assigned errors.

One of the errors assigned is that the verdict is not sustained by the evidence.

Mrs. Lovelace testified that as she was walking along on one of the streets of Memphis, after night, and passing the mouth of an alley, a man snatched her purse from her hand, and ran into the alley; that she followed, making an outcry, and that he turned and drew a pistol on her and threatened her life, thereby forcing her to abandon the pursuit; and that when he turned she saw his face by the light of an arc lamp near by. When he was arrested by the police of the city of Memphis, she called and identified him as the guilty party out of other negroes present. It was also shown by witness Yarborough that plaintiff in error pawned to him a diamond stud, which he claimed to have won from some other negro in a "crap" game. Mrs. Lovelace identified this diamond stud as hers, and as property which was in-

Chairs v. State.

closed in the purse at the time it was taken from her. Plaintiff in error first denied that he had pawned the property to Mr. Yarborough, but finally admitted it. When he was arrested by the policeman, a coat was handed to him by the keeper of the dive where he was engaged at the time, as his coat. He denied that it was his, but said it was the property of another negro. The policeman took him to that negro, and the latter denied that the coat was his. The pockets of this coat were full of pistol cartridges. The plaintiff in error met this evidence only by his own denial, and by evidence of two or three persons that he had previously borne a good reputation. The trial judge gave to the jury a full and fair charge, under which he was convicted as stated. We think there is no doubt whatever of plaintiff in error's guilt.

Another matter, however, occurred during the progress of the case in the court below, which was made the subject of an exception, and has been presented here. We take the following recital from the bill of exceptions:

"On the 9th day of June, 1910, the day this cause was called for trial, the defendant, in open court, and before he had been arraigned, or had pleaded to the indictment herein, presented and read to the court a motion to quash the indictment in this case.

"The motion to quash was signed and sworn to by the defendant, and was in these words:

"In the Criminal Court of Shelby County Tennessee.
"State of Tennessee v. Wash Chairs Alias Washington
Chairs.

"And comes the defendant in his own proper person,
and moves the court to set aside and quash the indict-
ment herein against him, because the jury commis-
sioners appointed to select the grand jury which found
and presented said indictment selected no person or per-
sons of color or of African descent known as negroes, to
serve on said grand jury; but, on the contrary, did ex-
clude from the list of persons to serve as such grand
jurors all colored persons or persons of African descent
known as negroes, because of their race and color, and
that said grand jury were composed exclusively of per-
sons of the white race, while all persons of the colored
race or persons of African descent known as negroes, al-
though consisting of and constituting about one-fourth
of the population of the registered voters of the city of
Memphis, and Shelby county, Tennessee, and although
otherwise qualified to serve as such grand jurors, were
excluded therefrom on the grounds of their race and
color, and have been excluded from serving on any jury
in said criminal court, for a great number of years,
which is a discrimination against the defendant since he
is a person of color and of African descent known as a
negro; and that such discrimination is a denial to him
of the equal protection of the laws, and of his civil rights
guaranteed by the constitution and laws of the United
States.

"All of which the defendant is ready to verify.

WASHINGTON CHAIRS.

"Subscribed and sworn to before me this 2nd day of June, 1910, Wm. Creagan, Notary Public. My commission expires May 8th, 1912."

The bill of exceptions proceeds:

"After hearing motion read, the trial judge overruled same. To the action of the court in overruling said motion, the defendant then and there excepted.

"Thereupon counsel for the defendant made the request that he be allowed to offer proof to sustain said motion. Said request was overruled by the trial judge, to which ruling of the court defendant's counsel then and there excepted. Defendant was then arraigned and pleaded not guilty."

The entry upon the minutes of the court upon this subject is as follows:

"Comes the attorney general on the part of the State and the defendant in proper person, and by counsel of record, whereupon the defendant moves the court to quash the above-styled indictment against him, which motion, after argument by counsel for both sides having been heard and fully understood by the court, is overruled. Whereupon the defendant on being arraigned at the bar of the court, and charged on the bill of indictment, pleads not guilty to the same, and for his trial puts himself upon the country. Whereupon the attorney general doth the like. Whereupon to try the issue of traverse herein joined between the State of Tennessee

and said defendant, there comes a jury of good and lawful men, to wit, [naming them], who having been duly elected, tried and sworn, well and truly to try said issue, a true deliverance make, and a true verdict render according to the law and the evidence, upon their oath do say defendant is guilty as charged in the indictment, and fix his punishment at five years in the State penitentiary. Whereupon the defendant moves the court for a new trial."

The motion made in the trial court, copied supra, was only a motion to quash, and was neither a proper nor permissible method of calling in question the constitution of the grand jury. *Ransom* v. *State,* 116 Tenn., 355, 96 S. W., 953. In that case it was said: "The indictment was in all respects regular on its face, and could not be invalidated on a mere motion to quash by objections presented to the constitution of the grand jury." This has been the practice in this State since a very early day. *Jetton* v. *State,* Meigs, 192; *Jones* v. *State,* 6 Humph., 435; *King* v. *State,* 3 *Heisk.,* 148, 153. We have one case (*State* v. *Willis,* 3 Head, 157), holding that the motion to quash may be based on defects in the minutes of the court, or omissions of matters that should appear thereon. The motion to quash may be said to be akin to a demurrer—indeed, an informal demurrer—though not so imperative as a demurrer in due form, since the trial court has a discretion as to whether it will act on such a motion at all, or require the party to file a regular demurrer, or a plea in abatement, in a

case proper for the latter. *Jones* v. *State,* supra. However, in our modern practice, for a great many years now, the motion to quash has been treated as equivalent to a demurrer, though the right is still recognized (*Palmer* v. *State,* 121 Tenn., 465, 490, 118 S. W., 1022) in the trial court to refuse to act unless a demurrer be presented in due form, stating in detail the grounds of objection. The quotation made, supra, from *Ransom* v. *State,* expresses with perfect accuracy the office of the motion to quash as the practice has been long understood in this State.

We are referred by counsel to a passage in *Turner* v. *State,* 89 Tenn., 547, 558, 559, 15 S. W., 838, 841, reading thus: "The law is correctly stated as follows: 'The defendant pleaded not guilty to the bill of indictment, and went to trial and was convicted. After this he shall not be permitted to object to the venire, or to the jurors summoned under it. If he have legal objection to the one or the other, he must avail himself of it, either by motion or plea, before he puts himself upon his country for his deliverance by his plea of not guilty. It is afterwards too late.' *State* v. *Cole,* 9 Humph., 628; *McTigue* v. *State,* 4 Baxt., 314; *Wallace* v. *State,* 2 Lea, 31; *State* v. *Dines,* 10 Humph., 512." The quotation was taken from the last paragraph in the case of *State* v. *Cole,* 9 Humph., 628. The question before the court in that case was whether the judgment in a criminal case could be arrested because of a defect in the *venire facias.* After holding that there was no force in the points made

against the *venire facias,* even if the question were properly before the court, the paragraph above quoted was added. The words "motion or plea," relied on by counsel in the present case, throw no light upon the present controversy. The court referred merely to the practice of assailing by motion defects on the face of the record, and by plea those not apparent. An instance of the first kind is shown in *State* v. *Willis,* supra. What was meant was that in case there were any valid objections to the venire or to the jurors apparent upon the face of the record they could be made by motion, if not in the record, then by plea. The passage was quoted in *Turner* v. *State* merely as authority for the holding of the court in the case before it that the objection under consideration there came too late because made for the first time in this court, insisted of in the trial court. That the passage quoted can have no bearing upon the present controversy is fully shown in the succeeding paragraph citing the cases setting forth the practice when it is sought to question the constitution of the grand jury.

It has been uniformly held in this State from a very early day that the constitution of the grand jury can be assailed only by a plea in abatement. *Bennett* v. *State,* Mart. & Y. 133, 135; *State* v. *Duncan,* 7 Yerg., 271, 275; *State v. Dines,* 10 Humph., 512; *Wallace* v. *State,* 2 Lea, 29, 31; *Ransom* v. *State,* supra. In all of our cases wherein it has been held that the question was properly before the court for its decision, the matter has been presented by plea in abatement. *State* v. *Bryant,* 10 Yerg.,

527; *State* v. *Baker,* 4 Humph., 12; *State* v. *Wills,* 11 Humph., 222; *State* v. *Swafford,* 1 Lea, 274; *State* v. *Maddox,* 1 Lea, 671; *Epperson* v. *State,* 5 Lea, 293; *Dyer* v. *State,* 11 Lea, 509; *State* v. *Deason,* 6 Baxt., 511; *State* v. *Jackson,* 2 Shannon's Tenn. Cas., 611; *State* v. *Martin,* 3 Shannon's Tenn. Cas., 479; *Rivers* v. *State,* 117 Tenn., 235, 96 S. W., 956; *Pennel* v. *State,* 122 Tenn., 622, 125 S. W., 445.

In *Bennett* v. *State,* supra (year 1827), it was said: "The defendant has a right to have a copy of the panel of the jury; and, if the indictment is not found by competent jurors, exceptions may be taken thereto before the defendant pleads not guilty, by plea, if the matter does not appear of record," etc. Mart. & Y., 135. In *State* v. *Duncan* (year 1834), it is said: "The authorities cited show that the proper and almost only mode of taking advantage of the objection is by plea in abatement." 7 Yerg., 275. In *State* v. *Dines* (year 1850), it was said: "The objection is only available by plea in abatement." 10 Humph., 512. In *Wallace* v. *State* (year 1878), it was said: "We have repeatedly held, and several times at the present term, that such objection can only be had by plea in abatement." 2 Lea, 31. In *Ransom* v. *State* (year 1905), it was said: "Under the practice in this State such extraneous matters lying beyond the four corners of the indictment should have been presented by a plea in abatement duly verified, and sustained by competent evidence." 116 Tenn., 361, 96 S. W. 954.

The trial judge therefore acted correctly in overruling the motion to quash.

But the same result must follow if we consider the motion to quash from the standpoint of a plea in abatement, because it was not properly verified. The verification was simply: "Subscribed and sworn to before me this 2d day of June, 1910. Wm. Creagan, Notary Public." Shannon's Code, section 4622, provides: "No plea in abatement shall be received in any court, unless its truth is verified by the oath of the party or otherwise." This was taken from Act 1794, c. 1, section 26. Construing this act, this court said, in *Bank* v. *Jones*, 1 Swan, 391: "The affidavit verifying such plea must be positive as to the truth of every fact contained in the plea, and should leave nothing to be collected by inference; it must be stated that the plea is true in substance and fact. And in the absence of such affidavit the plaintiff may treat the plea as a nullity, and move the court to set it aside." Accordingly, in that case a verification on "information and belief" was held bad. In *Trabue* v. *Higden,* 4 Cold., 620, it appeared the verification to the plea was: "Sworn to and subscribed before me, January the 9th, 1861. Samuel P. McGaw, Clerk." This was held bad. The court said: "It is clear under the act of 1789, c. 1, and the uniform practice of our courts, the verification was not sufficient; but it is said the strictness of the rule adopted under the act of 1789 has been modified by Code, sec. 2901." Shannon's Code, sec. 4622. "We, do not think so. True, the language employed in

Chairs v. State.

·the Code is not precisely the same used in the former statute, but it is in substance and effect the same, and cannot, therefore, be held to make any modification of the rule.   The plea having been filed without a proper verification was improperly received by the court, and might have been treated by the plaintiff as a mere nullity.   They could have moved to have it taken from the file; or they could have taken judgment by default at any time after the right to a judgment by default occurred, as if no plea had been in, totally disregarding it.   Code, section 2901; [*Grove* v. *Jenkins*]  9 Yerg., 10; [*Settle* v. *Settle*]  10 Humph., 504; [*Baker* v. *Compton*]  2 Head, 471; [*Trabue & Lucas* v. *Higden*]  4 Cold., 623, 624."   A similar verification was held bad in *Friedlander* v. *Pollock*, 5 Cold., 490, 495, 496, and language equally strong was used.   All of these cases were approved and reaffirmed in the later case of *Wrompelmeir* v. *Moses*, 3 Baxt., 467, 470; and again in *Cheatham* v. *Pierce & Ryan*, 89 Tenn., 668, 678, 15 S. W., 1080; also in *Armstrong* v. *State*, 101 Tenn., 389, 391, 47 S. W., 492.

The trial judge could not therefore have received or entertained, as a plea in abatement, the motion in controversy here.

But, putting this view aside for the moment, and examining the motion as if it were in form a plea in abatement, and properly verified, it came too late.   The crime was committed April 9th.   It appears from the record that the *venire* was summoned into court for May 16, 1910, and the grand jury was constituted   May   17th.

Plaintiff in error was indicted on May 31, 1910. He presented his motion in open court to the trial judge, it not having been previously filed with the clerk, on June 9, 1910. This paper contains no fact or statement showing why it had not been offered earlier, during the preceding eight or nine days, or why no earlier objection had been made to the constitution of the grand jury. He does not state in his motion when he was arrested, or when knowledge of the indictment first came to him. The rule is that if the want of an opportunity to challenge the panel is an element in the right to maintain the plea, the existence of such want of opportunity must be negatived. The plea must exclude, by proper allegations and averment, every legal intendment or conclusion that otherwise might be made against it by the court. It must appear from its averments to have been filed at the earliest possible time. *Pennel* v. *State,* 122 Tenn., 622, 631, 125 S. W., 445; *Rivers* v. *State,* 117 Tenn., 235, 96 S. W., 956; *Ransom* v. *State,* 116 Tenn., 355, 96 S. W. 953. And the rule is general that the greatest strictness prevails in the construction and application of pleas in abatement. They must possess the highest degree of certainty known to law in every particular. *Grove* v. *Campbell,* 9 Yerg., 7, 10; *State* v. *Bryant,* 10 Yerg., 527; *Baker* v. *Compton,* 2 Head, 471; *Stephens* v. *Gilbert,* 1 Shannon's Tenn. Cas., 663, 666; *State* v. *Jackson,* 2 Shannon's Tenn. Cas., 611; *Dyer* v. *State,* 11 Lea, 509, 512, and cases cited; *Ward* v. *State,* 102 Tenn., 724, 52 S. W., 996; *Smartt & Carson* v. *State,* 112 Tenn., 539, 546,

80 S. W., 586; *Ransom* v. *State,* supra; *Rivers* v. *State,* supra; *Pennel* v. *State,* supra.

As to the request made by plaintiff in error's attorney "that he be allowed to offer proof to sustain said motion," this was not made until after the motion had been properly overruled, and therefore, in any view was necessarily idle and useless.

It is insisted, however, that the present case is controlled by *Carter* v. *Texas,* 177 U. S., 442, 20 Sup. Ct., 687, 44 L. Ed., 839; that it appears from that case that the question was made in the trial court by a motion to quash substantially the same as the one offered in the present case; that the supreme court held that it was a matter for its own determination whether the federal question was properly presented; and that it held the form of presenting by motion to quash was a proper one, and that evidence should have been heard.

The assumption involved in this effort to bring the present case within *Carter* v. *Texas,* in view of the ancient clear and unbroken system of practice upon the subject in this State, as shown by our cases above referred to, is that the supreme court of the United States will not and does not recognize and respect the course of practice obtaining in the State courts in matters subsequently transferred in due course of law to that high tribunal. That this is a false assumption we shall now proceed to show by reference to cases arising within the special branch of the law which we now have under consideration.

In *Carter* v. *Texas,* the court recites that the court of criminal appeals of the State of Texas "admitted that 'in this particular case no opportunity was afforded appellant to challenge the array, because the grand jury which returned the bill against him had beeen impaneled prior to the commission of this offense,' and consequently that a motion to quash the indictment made after his arrest under it, and before his arraignment, was a proper and timely mode of presenting a fundamental objection under the constitution and laws of the United States, although no such objection was mentioned in the statutes of the State."

The point is fully presented in the case of *Tarrance & Others* v. *Florida,* 188 U. S., 519, 23 Sup. Ct., 402, 47 L. Ed., 572. In that case there was the same sort of controversy before the court that we have here. It appeared that the plaintiff in error made a motion to quash the *venire,* and the panels of the grand and petit jurors, on the same ground stated in the motion before the court in the present case. This was on December 3d. It also appeared that on December 6th the State's attorney moved the court to strike out the defendant's motion on the grounds that it was impertinent, submitted nothing for the court's determination or consideration, was not such a motion as the court could consider, and set up no state of facts which, if true, would justify the quashing of the *venire.* On the same day, this motion of the State's attorney was sustained, and the motion of the defendants in that case to quash was stricken out. On the same day they filed a motion to quash the indictment on substan-

tially the same grounds. This motion was overruled. In the opinion of the supreme court the following is quoted from the opinion of the supreme court of Florida, stating the grounds of the court's action, which it is perceived, are the same grounds on which we have acted in the present case. The supreme court of Florida, as its opinion is reproduced in the opinion of the supreme court of the United States, said:

"As to the grand jury, the defendants had no right at that time to move to quash the panel. If defendant's could properly move to quash the panel or challenge the array of grand jurors for the reasons stated in this motion, it could only be done before the grand jury was impaneled, or at least before the indictment was found. Whether it could be done in that way, we do not now decide. We are clear, however, that a motion to quash the panel of grand jurors by one who has been indicted by such jurors it not proper practice. *Gladden v. State,* 13 Fla., 623. As we shall show further on, a plea in abatement of the indictment is the proper remedy. We regard the ruling sustaining the motion to strike, as equivalent to holding that the motion to quash was not the proper method of raising the question sought to be raised; and while we do not approve of the practice of moving to strike a motion, we do not see that the defendants have been injured by the form of the ruling complained of.

.   .   .

"We are of the opinion that the proper method of presenting the question sought to be presented by this motion is by plea in abatement of the indictment, and not

by motion to quash, and that the ruling upon the motion can be sustained upon that ground. It has for many years been the practice in this State, sanctioned by repeated rulings of this court, that all objections to the competency of, and to irregularities in selecting, drawing, and impaneling grand jurors, not appearing of record, must be taken advantage of by plea in abatement of the indictment, and not by motion to quash it. *Woodward v. State*, 33 Fla., 508, 15 South., 252; *Kitrol v. State*, 9 Fla., 9; *Gladden v. State*, 13 Fla., 623; *Tervin v. State*, 37 Fla., 396, 20 South., 551. See, also, *State v. Foster*, 9 Tex., 65."

The court then reviewed and quoted from several of the Florida cases sustaining fully so much of the opinion of the Florida court as we have above quoted, and then continued: "So we have not merely the ·declartion of the court in this particular case as to the practice to be observed, but a declaration supported by many prior decisions. Obviously it is the settled rule in the State." Thereupon the judgment of the supreme court of Florida was affirmed.

This case appears to us conclusive of the controversy. However, we refer to two other cases showing the regard which the supreme court of the United States pays to the regular course of practice in the State courts in presentation of questions to those courts, viz., *Layton v. Missouri*, 187 U. S., 356, 23 Sup. Ct. 137, 47 L. Ed. 214; *Mutual Life Insurance Co. v. McGrew*, 188 U. S. 291, 23 Sup. Ct., 375, 47 L. Ed., 480; *Hulbert v. Chicago*, 202 U. S., 275, 26 Sup. Ct., 617, 50 L. Ed., 1026.

We think there was no error in the action of the trial court, and the judgment is affirmed.