Paul Steve SHADDEN, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Oct. 3, 1972.

Certiorari Denied by Supreme Court Nov. 20, 1972.

Joseph J. Levitt, Jr., & Rufus W. Beamer, Jr., Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, John Gill & Lance Evans, Asst. Dist. Attys. Gen., Knoxville, for defendant in error.

OLIVER, Judge.

## OPINION

Convicted of unlawful possession of marijuana and sentenced to imprisonment in the Knox County Workhouse for 11 months and 29 days, defendant Paul Shadden has duly perfected an appeal in the nature of a writ of error to this Court.

Although the defendant does not question the sufficiency of the evidence to warrant and support the verdict, we consider it appropriate to set out a brief summary of the material facts appearing in the trial record. On August 19, 1971 about 8:15 p. m., Layron Doyal, a member of the Knoxville Police Department working as an undercover agent, was in a parking lot on Cumberland Avenue in Knoxville in an area known as "the strip." He heard the defendant ask an unidentified person, both of whom were standing only three or four feet away, if he wanted some "good grass" and saw the defendant exchange a plastic bag containing "a green vegetation substance" for currency. The agent had seen the defendant engage in similar transactions on two previous occasions. The agent left the parking lot to get something to drink at the nearby Vol Market, and when he returned to the lot the defendant was still there and asked him if he wanted to buy some marijuana. They then went to the defendant's apartment, where he sold the agent a bag of marijuana for $10.

The defendant testified that he saw Doyal, whom he had known for about a month, on Cumberland Avenue and stopped to talk; that Doyal asked him if he had any marijuana, and that he replied negatively; that Doyal persisted in his request, and finally he told Doyal that he saw someone who might have some; that he then went into the Tennessee Restaurant where he saw a person he knew as "Junior," who agreed to sell some marijuana; that Junior gave him the marijuana which he in turn gave to Doyal for $10; and that he then gave the $10 to "Junior."

By his first Assignment of Error the defendant contends that the indictment is void for the reason that persons between the ages of 18 and 21 were systematically excluded from the Grand Jury which returned the indictment. He raised the same question in the trial court by a motion to quash the indictment, and again in his motion for a new trial complained that the trial court erred in overruling his motion to quash.

The law is firmly established in this State that a motion to quash an indictment will not lie unless it is invalid upon its face. State v. Smith, 1 Tenn.Crim.App. 163, 432 S.W.2d 501; Yearwood v. State, 2 Tenn.Crim.App. 552, 455 S.W.2d 612. The indictment in this case is altogether regular and no invalidating infirmity appears upon its face. In the *Smith* and *Yearwood* cases, supra, among other cases decided by our Supreme Court, we quoted as follows from Smith v. State, 207 Tenn. 219, 338 S.W.2d 610:

"This assignment must be overruled for at least one reason and that is a motion to quash will not lie, unless the indictment is defective on its face. State v. Davis, 204 Tenn. 553, 322 S.W.2d 232."

Where an indictment is defective or invalid for any reason not appearing on its face, the defect must be presented by a plea in abatement. Wireman v. State, 146 Tenn. 676, 244 S.W. 488. Specifically, the formation and constitution of the Grand Jury cannot be questioned by a motion to quash the indictment, and can only be assailed by a plea in abatement. Ransom v. State, 116 Tenn. 355, 96 S.W. 953; Chairs v. State, 124 Tenn. 630, 139 S.W. 711; Price v. State, 199 Tenn. 345, 287 S.W.2d 14.

Notwithstanding those fundamental principles, the trial court, albeit erroneously, apparently treated the motion to quash the indictment as a plea in abatement and permitted presentation of proof. For this reason only we address the issue which the defendant attempted to raise in his motion to quash, but in doing so we wish to make it perfectly clear that this Court neither condones nor approves such improper use of this motion.

By Chapter 159 of the Private Acts of 1965 the Legislature provided Knox County with a jury system. Section 4 of this Act provides that the Board of Jury Commissioners shall select "from the tax books, permanent registration lists, and poll books of the County, the names of . . . upright and intelligent men and women of fair character and sound judgment, resident citizens of the County, *who are eligible for jury service according to the qualifications of jurors as now prescribed by law;* . . . said names when so compiled by said Commissioners shall be listed alphabetically, numbered consecutively, and shall constitute the jury list for the jury box of said County and from this the venire for each term shall be pulled by lot . . . Said box shall be securely locked and sealed by the Secretary and Clerk and so kept until ordered by the Judges to break said seal and unlock said box for drawing of the venires." (Emphasis supplied).

Section 5 of the same Act provides that "at such time as the Judges shall determine, and in ample time before each Regular or Special Term of the Circuit and Criminal Courts, *upon order of the Judges* and in the presence of two or more of the Judges, the Secretary and Clerk shall unlock the Jury Box, break the seal thereof and after having well shaken same, cause to be drawn therefrom, in the presence of the Board, by a child under the age of ten years, or a person over said age but blindfolded, such number of names as may be ordered to be taken therefrom by the Judges of said Courts from which to impanel petit and trial juries for the respective terms of said Courts." (Emphasis supplied).

The basic qualifications prerequisite to serving as a juror in the courts of this State are prescribed by TCA § 22–101:

"Every person of the age of twenty-one (21) years, being a citizen of the United States, and a resident of the state of Tennessee, and of the county in which he or she may be summoned for jury service for a period of twelve (12) months next preceding the date of such summons, is legally qualified to act as a grand or petit juror, if not otherwise incompetent under the express provisions of the Code. A woman shall have the option of serving or not when summoned to jury duty."

The 1971 Legislature of this State enacted the "Legal Responsibility Act of 1971" which provides: "Notwithstanding any laws to the contrary, any person who is eighteen (18) years of age or older shall have the same rights, duties and responsibilities as a person who is twenty-one (21) years of age or older." This Act, codified as TCA § 1–313, became effective on May 11, 1971 and extended the elective franchise to persons 18, 19 and 20 years old.

At the hearing on the motion to quash the indictment, the proof showed that approximately a year or a year and a half before the defendant's trial in November 1971, a jury list of 15,000 names, obtained from the voter registration records of Knox County, was compiled by the Jury Commission pursuant to Chapter 159 of the Private Acts of 1965.

The newly-enfranchised voters began registering in Knox County during the first week of June 1971. However, pursuant to instructions by State election officials, the names of those new registrants were withheld from the voter registration records and were kept separate, because of pending litigation, until receipt of a court order the second week of July. Sometime during June, the Jury Commission drew 450 names from the Jury Box to serve in the July term of court, and the Grand Jury for that term of the Knox County Criminal

Court was selected and empaneled from that group, and on September 13, 1971 that Grand Jury indicted the defendant who was then 19 years of age. Apparently about this time, perhaps somewhat earlier, the Jury Commission began the process of refilling the Jury Box with another 15,000 names, as is usually done every year and a half. On September 16th the Knox County Criminal Judge ordered the Commission to include the names of 240 of the newly-registered 18, 19 and 20-year-olds, and this was done. That action is not questioned.

With this review of the Knox County jury system and its operation during the pertinent period, we turn now to consider the defendant's earnest contention that the indictment was void because persons in the 18–19–20 age group were systematically excluded from the Grand Jury. His position is untenable.

In the first place, the jury list from which the defendant's Grand Jury was empaneled was regularly selected and compiled and the names were duly placed in the Jury Box long before people 18–20 years of age were enfranchsed on May 11, 1971. Persons under the age of 21 were not legally qualified to serve as jurors until May 11, 1971. There is no insistence, nor could there be any on this record, that the procedure and method employed by the Jury Commission in compiling that jury list and filling the Jury Box were in anywise unlawful. Thus, it affirmatively appears that there was no systematic exclusion of otherwise qualified voters during the selection and compilation of the jury list and Jury Box from which the defendant's Grand Jury came.

"It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. 'Our duty to protect the federal

constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.'" Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549. And, "It has become well-established that voter registration lists are appropriate for use in jury selection systems." United States v. Butera, 420 F.2d 564 (1st Cir. 1970).

According to this record, when the time arrived for drawing the venire from the Jury Box for the July 1971 term of court, the Jury Box was not exhausted and the required 450 names were drawn. So, at that time nothing had occurred necessitating selection of a new jury list and a refilling of the Jury Box, and there had been no occasion or reason for doing so prior to that time.

In these circumstances, the Knox County Jury Commission was neither required nor permitted to assume the initiative and proceed upon its own motion to add to the existing jury list and Jury Box the names of 18–20-year-olds as soon as their names appeared on the voter registration records. In fact, the Jury Commissioners are prohibited from adding any name to a jury list or venire and from assisting in or conniving at any such acts, and the custodian of the Jury Box and list is prohibited from permitting any such to be done, the obvious purpose of those proscriptions being to preserve the integrity of the jury system. (Chapter 159, Private Acts of 1965, § 11). As a further precaution, when the Jury Box is filled the Act requires that it be locked and sealed *"and so kept until ordered by the Judges to break said seal and unlock said box for drawing of the venires."* Ibid Section 4. (Emphasis supplied).

Clearly, then, there was no lawful way by which names of newly-enfranchised 18–20-year-olds registering to vote could be added to the jury list and Jury Box of Knox County as soon as their names appeared on the registration records. This being true, patently there is no legal basis whatever for the defendant's contention that names of such persons should have been added to the jury list and Jury Box before the venire was drawn from which his Grand Jury was empaneled, and that that Grand Jury was unlawfully constituted.

Furthermore, the defendant offered no evidence to establish, and we are not persuaded, that persons between the ages of 18 and 20 constitute a cognizable distinct class or group in the general population. This record is barren of any evidence and we cannot assume, that the attitudes and propensities and predilections and viewpoints of persons in this age group are peculiar to them and are any different than, say, those of persons in the age group of 21–25, nor that those in the younger bracket are endowed with any greater capacity for perceptiveness and discernment and impartiality.

For the purpose of selecting people to serve on juries, the defendant would create a new class in society composed of those over 18 and under 21 years of age. The fallacy of such a concept is immediately apparent in its fearsome implications. It would permit a defendant of any given age to mount an attack upon his indictment upon the ground that people in the county of the same age constituted a legally cognizable class requiring separate constitutional recognition. In devising a method of selecting citizens for jury service it is obviously altogether impracticable to attempt to identify and categorize people by precise age groups such as 18–21, or 21–26, or 45–50, or 60–65. Certainly a defendant has no constitutional complaint that no one of his age was on the Grand Jury which indicted him or on the trial jury which convicted him. In the administration of jury laws, proportional class representation is not a constitutionally required factor. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159,

7 L.Ed.2d 118; State ex rel. Smith v. Johnson, 220 Tenn. 49, 413 S.W.2d 694; State ex rel. Hathaway v. Henderson, 1 Tenn.Crim.App. 168, 432 S.W.2d 503.

■ The burden was on the defendant to prove his allegations of systematic and purposeful discrimination against newly-registered 18–20-year-olds in the jury selection process. State ex rel. Hathaway v. Henderson, supra; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599.

■ To establish a constitutional violation, the defendant must sustain two burdens of proof. First he must prove that the group of persons allegedly excluded constitute a distinct and separate class in the population of the county. If such a discrete and cognizable class is shown, then the defendant has the further burden of proving that members of this class were purposefully and systematically excluded from jury service. "When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or as applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated." Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866. The defendant has not carried either burden.

The Court also said in *Hoyt,* supra, that the right to an impartially selected jury "does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions."

■ The defendant's next complaint is that the trial court erroneously failed to grant his motion for a preliminary hearing. In a hearing upon this motion, the defendant testified that during his confinement of three or four hours in the city jail following his arrest he inquired about bail and was informed by two police officers that if he had a preliminary hearing he would have to post bond twice; that he was then taken before the city judge who informed him of his right to counsel, his right to have an attorney appointed if he did not have one, his right to a preliminary hearing or to be bound over to the Grand Jury, and the charges against him; that, understanding that he could be released on bail in the event he was bound over to the Grand Jury, he informed the city judge that he elected to be bound over; that he did not understand from the city judge's advice whether he was entitled to counsel in the city court or at his trial; and that he did not understand the nature of a preliminary hearing. Shadden's attorney testified that after the defendant's election to be bound over to the Grand Jury, but before the return of the indictment, he filed in the city court a motion for a preliminary hearing, and that the city judge overruled that motion on the ground that he had no jurisdiction or authority to withdraw the case from the Knox County Grand Jury. That ruling was unquestionably correct.

After the return of the indictment, the defendant filed a motion in the trial court asking for a preliminary hearing, which was overruled.

■ While we disagree with the defendant's insistence that he did not waive a preliminary hearing in the city court, whether he did or did not do so has no controlling significance. The presiding fact is, as this Court and the Supreme Court of this State and federal courts have repeatedly held, a preliminary hearing is not constitutionally required in a criminal prosecution in Tennessee, and an accused has no constitutional right to a preliminary hearing. State ex rel. Carroll v. Henderson, 1 Tenn.Crim.App. 427, 443 S.W.2d 689; State ex rel. Leighton v. Henderson, 1 Tenn.Crim.App. 598, 448 S.W.2d 82; Shepard v. Henderson, 1 Tenn.

Crim.App. 694, 449 S.W.2d 726; Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1; Harris v. Neil, 437 F.2d 63 (6th Cir. 1971).

Contrary to the defendant's insistence, Chapter 245 of the Public Acts of 1971, codified as TCA § 40–1131, added no constitutional dimension to our preliminary hearing statutes, and added nothing to existing statutes on that subject except to repeal TCA § 40–402 which provided for binding over accused persons arraigned before a committing magistrate during a session of the county Grand Jury. That act, TCA § 40–1131, provides:

"In all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary hearing upon his request therefore [sic], whether the grand jury of the county be in session or not."

By the express terms of this statute, the right to a preliminary hearing only exists *prior to presentment or indictment.*

■ In returning the indictment against the defendant the Grand Jury found probable cause for believing he committed the offense charged therein. The only function of the Grand Jury with reference to offenses and alleged offenses it investigates is to determine the question of probable cause, whether there is probable cause to believe that the person in question committed the offense and should be formally accused thereof by an indictment or presentment and brought to trial.

■ Likewise, the only purpose of a preliminary hearing is to determine whether there is probable cause to believe the accused committed the offense charged, TCA §§ 40–1116 and 40–1117, and to fix the amount of bail in bailable offenses, TCA §§ 40–1117 and 40–1119.

■ Thus, after the return of the indictment by the Grand Jury, representing its finding of probable cause to believe that the defendant committed the offense charged therein, obviously a preliminary hearing to re-determine the same question was not required. Shaw v. State, 164 Tenn. 192, 47 S.W.2d 92.

■ Clearly, in enacting TCA § 40–1131 with its carefully designed limitation, the Legislature wisely recognized that to permit a preliminary hearing and a re-determination of the question of probable cause after return of an indictment or presentment would be intolerable. A finding of no probable cause by the committing magistrate in such a preliminary hearing would not and could not invalidate and vacate the prior presentment or indictment and discharge the accused. The futility of such a procedure is plain, and plainly was recognized by the Legislature.

Furthermore, the Legislature manifestly was fully cognizant of the broad inquisitorial powers vested in the Grand Jury and recognized that the power and authority of the Grand Jury to inquire into and make its own independent investigation of crimes and criminal activity within the county makes that body the single most powerful law enforcement agency in the community, and deliberately determined to preserve the Grand Jury's vitally essential inquisitorial function. To hold otherwise, as the defendant would insist, would be to divest the Grand Jury completely of its inquisitorial function and powers and render it powerless to investigate crime in the community upon its own initiative and to return presentments to the court against individuals not previously arrested or even officially accused.

The defendant's next plaint is that the trial court erred in overruling his motion for a bill of particulars, or in the alternative to quash the indictment, on the ground that the indictment failed to give him notice as to what offense he was called upon to defend.

The indictment charges that the defendant "On the ———— day of August 1971, in the State and County aforesaid, unlawfully,

knowingly and feloniously did sell, barter and trade for remuneration a quantity of Marihuana, the same being a controlled substance, in violation of Chapter 163 of the Public Acts of 1971 of the State of Tennessee, contrary to the statute, and against the peace and dignity of the State."

The defendant complains specifically that he was "here charged with selling, bartering or trading for remuneration a quantity of controlled substance. Just how he sold, the dates of the sale or to whom he sold is not set forth in the indictment. Each of the mentioned words—sell, barter and trade—are conclusions or legal results with diverse connotations. The appellant would therefore respectfully submit that is it [sic] impossible to fairly meet the charge against him."

■ In urging this contention, Shadden confronts insurmountable obstacles. In the first place, "An insufficient indictment or presentment cannot be cured by a bill of particulars. That practice is unknown to our criminal procedure." Stanley et al. v. State, 171 Tenn. 406, 104 S.W.2d 819.

■ Secondly, the defendant was not convicted of selling marijuana, as charged in this indictment. Instead, the jury only convicted him of the lesser-included offense of possessing marijuana. Thus, all the questions raised in his motion for a bill of particulars, which he alternatively treated as a motion to quash, attacking the sufficiency of the marijuana-selling indictment were clearly and unquestionably rendered moot by his conviction of possessing only.

Marijuana is included in the drugs and substances regulated and controlled by the Tennessee Drug Control Act of 1971. TCA §§ 52–1409(n), 52–1422. The unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver or sell marijuana, and other controlled substances are proscribed and penalized by TCA §§ 52–1432—52–1434.

■ Moreover, we consider it appropriate to note in passing that there is no merit in the defendant's insistence that the indictment was invalid because it did not specify the date of the offense nor the name of the purchaser.

TCA § 40–1808 provides:

"The time at which the offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding thereof, or generally before the finding of the indictment, unless the time is a material ingredient in the offense."

■ The rule is that the offense must be proved to have been committed prior to the finding of the indictment and within the time specified by any applicable statute of limitations; and, except where a special date is essential or time is of the essence of the offense, the time of the commission of the offense averred in the indictment is not material, and proof is not confined to the time charged. State ex rel. Tines v. Bomar, 205 Tenn. 572, 329 S.W.2d 813, cert. den. 363 U.S. 822, 80 S.Ct. 1262, 4 L. Ed.2d 1519. See also: State v. Shaw, 113 Tenn. 536, 82 S.W. 480; Greene v. State, 176 Tenn. 449, 143 S.W.2d 713; State v. Yates, 217 Tenn. 160, 395 S.W.2d 813.

The settled law of this State is that an indictment charging unlawful sale of whiskey is not defective for failure to allege the name of the person to whom the sale was made, Galbreath et al. v. State, 187 Tenn. 669, 216 S.W. 689, nor if it charges that the sale of liquor was "to a person to the grand jurors unknown," State v. Carter, 26 Tenn. 157. See also: State v. Harris, 34 Tenn. 224. Unquestionably, the same principle is applicable where, as here, the indictment charges the unlawful sale of a controlled substance.

■ Also plainly unfounded is the defendant's insistence that the trial court erroneously declined his request for a special

charge to the jury on the subject of entrapment. The doctrine of entrapment is not recognized as a defense in this State. Warden v. State, 214 Tenn. 398, 381 S.W. 2d 247; Roden v. State, 209 Tenn. 202, 352 S.W.2d 227. The record in this case shows that the Knoxville Police Department undercover agent in no way induced or lured the defendant into the commission of the offense charged in the indictment by any deception, trickery or artifice, and that he did no more than furnish the opportunity for the commission thereof by the defendant who had the requisite criminal intent as evidenced by prior like acts and deeds.

Equally baseless is the defendant's final contention that the undercover agent was an accomplice and that the trial court erred in holding otherwise and in refusing to instruct the jury that the testimony of an accomplice must be corroborated. The applicable rule of law is stated as follows in 23 C.J.S. Criminal Law § 788, p. 11:

"A detective or police officer who is engaged in attempts to discover violations of the law is not an accomplice of one charged with such a violation, even though the detective may have been instrumental in procuring the specific violation of the law on which the prosecution is based. Familiar illustrations of this principle are found in cases where detectives or other officers, investigating alleged illegal sales of liquor, purchase such liquor for the purpose of securing evidence, or where detectives join a conspiracy or a criminal organization for the purpose of exposing it and bringing the criminals to punishment.

"Where informers or agents, under the direction of public authorities, continue to act with their guilty confederates until the matter can be so far advanced and matured as to insure the conviction and punishment of such confederates, the informers are not accomplices."

See also: Warden v. State, supra, and authorities therein cited.

Affirmed.

RUSSELL, J., and JOHN D. TEMPLETON, Special Judge, concur.