Perry Glenn SULLIVAN, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Feb. 14, 1974.

Certiorari Denied by Supreme Court
July 29, 1974.

Jack R. Brown, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Franklin Groves and Thomas Evans, Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

OLIVER, Judge.

## OPINION

Represented by retained counsel, although declared indigent by the trial court subsequent to trial because he was unable to pay for preparation of the transcript, Sullivan was convicted of concealing stolen property, valued in excess of $100, in two separate cases tried together, and was sentenced to the minimum of imprisonment in the penitentiary for three years in each case. T.C.A. § 39–4217.

By his first three and sixth Assignments of Error the defendant makes the usual assault upon the sufficiency of the evidence to warrant and sustain the verdict of the jury.

The property involved in each indictment was an automobile, one of them a 1963 Chevrolet Corvette stolen November 4, 1972 from Michael Hayas, and the other a 1966 Chevrolet Chevelle stolen November 3, 1972 from Wayne Qualls. On November 5, 1972, upon information that two automobiles were being stripped, the police chief of Soddy-Daisy, Tennessee and other policemen went to an abandoned house on Mobray Mountain, surrounded by junk cars. There he saw the defendant and his brother, Kenneth Reynolds, Clarence Reynolds and a man named Ables. As the chief approached, the defendant walked between two cars that Ables and the two Reynolds men were working on, and went on to the steps of the house. The police chief told the defendant he wanted to leave the police cars there temporarily and asked him how long he would be there, to which the defendant, whose hands were dirty and greasy at the time, replied that he did not know.

Leaving the police cars parked there, the chief and the other police officers walked down through a nearby woodland for about a mile or a mile and a half and found a 1963 Corvette and a 1966 Chevelle partially stripped. Parts of the Corvette were found in Clarence Reynolds' car. The Corvette's motor was found beside a Ford, covered with brush and parked across the road from where the Reynolds and the other men were working. In a 1965 Ford parked about 50 feet from the abandoned house, were found the Corvette's transmission, its steering wheel, valve covers, carburetor, alternator, and stereo speaker. Also in the same Ford the police found a device known as a dent-puller which can be used to remove the lock mechanism from automobiles. Two tool boxes shown to have been taken from the Corvette were found in a 1964 Comet. The Chevelle's motor was found in the trunk of a deserted car. The switch mechanism had been removed from both the Corvette and the Chevelle.

The defendant and the other men were gone when the chief and the other officers returned from the woods.

The defendant denied any connection with stealing the cars or removing or possessing them or any stolen parts from either of them. He testified that he went to the abandoned house to fix the transmission support on a car which he had borrowed; that the owner of the borrowed car told him if he could fix the car, he could use it until he got his own transportation; that he removed a rubber transmission support from a 1953 or 1954 Ford and left after putting it into the borrowed 1964 Chevelle, and was there only about an hour; that he did not know stolen automobiles were taken to that place to be stripped; that he had never been down in the woods near the abandoned house; that the other men were there when he got there, and were working on their cars; that his brother Jimmy was helping Ables put a 1966 Chevrolet engine in Ables' car, which they took from a Chevrolet he saw Ables towing to that location the day before. He admitted he knew Ables and the Reynolds had the reputation of being car thieves.

A sheriff's department detective, a prosecution witness, who arrived on the scene while the chief of police and his policemen were there, testified in rebuttal that the only 1963 Ford he saw there was a station wagon on the edge of the woods and it did not appear to have been jacked up for the purpose of removing a transmission support. As noted, the defendant said he took a transmission support off a 1953 or 1954 Ford.

■ Receiving and concealing stolen property are separate and distinct offenses. Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649; T.C.A. § 39-4217; 76 C.J.S. Receiving Stolen Goods § 7, p. 10.

"In order to sustain a conviction for concealing stolen property, besides proof of the theft and defendant's actual or constructive possession soon thereafter, it is necessary to show that the defendant knew that the goods were stolen." State v. Veach, 224 Tenn. 412, 456 S.W.2d 650.

The law regarding the requirement of possession of the stolen goods by the accused is stated in 76 C.J.S. Receiving Stolen Goods § 6b:

"In order to satisfy the requirement of possession of the goods by accused, actual, physical, or manual possession is not necessary, but constructive or potential possession or control will be sufficient; nor is it necessary that accused should have actually seen the property. Nevertheless, accused must have had such control over the property as amounted at least to constructive possession; if he does not have actual physical possession of the property, he must have a measure of control or dominion over its custody. He has such constructive possession where the goods are in the possession of someone over whom he has for the time being direction and control, such as his authorized servants or agents, or the thief himself, so that the goods will be forthcoming when he orders, and also where by his direction the goods are deposited in a place subject to his control, or where they are concealed on his premises by others with his knowledge or consent."

■ Here the only evidence connecting the defendant with the stolen cars was that he was seen about a mile or a mile and a half from where they were found. There is no evidence whatever that he ever had any actual or constructive possession of the vehicles or any parts therefrom or that he exercised or sought to exercise any control or dominion over either. The defendant may be guilty, but this record is devoid of any evidence to prove it. A verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility. Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213; Rucker v. State, 174 Tenn. 569, 129 S.W.2d 208; Evensky v. City of Memphis, 49 Tenn.App. 24, 350 S.

W.2d 76; Williams v. Daniels, 48 Tenn. App. 112, 344 S.W.2d 555.

■ Unquestionably he has borne his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S. W.2d 799; Chadwick v. State, 1 Tenn.Cr. App. 72, 429 S.W.2d 135.

■ There is no merit in the defendant's contention that there was no proof the alleged offenses occurred on November 5 as set out in the indictments. The record refutes that insistence. Besides, the settled rule is that the offense must be proved to have been committed prior to the finding of the indictment and within the time specified by any applicable statute of limitations; and, except where a special date is essential or time is of the essence of the offense, the time of the commission of the offense averred in the indictment is not material, and proof is not confined to the time charged. Shadden v. State, Tenn.Cr.App., 488 S.W.2d 54 and authorities therein cited.

■ Also baseless is the complaint that the court erred in not granting a mistrial when the prosecution examined him about previous convictions for violation of the liquor laws. Declining to enter a mistrial, the court did sustain defense counsel's objection and instructed the jury to disregard the question and the answer. The error was thus cured. Edwards v. State, 221 Tenn. 60, 424 S.W.2d 783. For there is a presumption that the jury does not disregard the court's instructions not to consider inadmissible evidence. O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759.

■ For the same reasons and upon the same authorities last cited, there is no merit in the defendant's claim that the trial court committed error in not granting a mistrial when, in his final argument, the District Attorney General pointed to Jerry Ables in the courtroom and commented on the fact that he was not called as a witness. The court promptly sustained defense counsel's objection and instructed the jury to disregard the comments altogether.

■ Finally, equally unfounded, is the contention that the trial court committed error in recharging the jury after it had returned an erroneous verdict. When the jury first returned into open court it announced that it had found the defendant guilty of receiving stolen property and concealing stolen property under each indictment. There was a receiving count in each indictment. The court instructed the jury that it could find the defendant guilty of only one offense under each indictment and instructed them to deliberate further. Even if the proof had established that the defendant received and took into his possession the stolen vehicles with guilty knowledge and fraudulent purpose, as to which, as above noted, there was no proof, the trial court's action was obviously taken to avoid the possibility of erroneous pyramiding of punishment. This was for the benefit of the defendant. Thus, even if the trial judge erred, and we hold he did not, it is fundamental that a defendant is not prejudiced by an error which does not injure him or which is to his advantage or benefit. Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900.

The judgment of the trial court is reversed and this case is remanded thereto for a new trial.

WALKER, P. J., concurs.

GALBREATH, Judge.

I concur and recommend that a nolle prosequi be entered by the State.