IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 5, 2010

## STATE OF TENNESSEE v. MICHAEL DEWAYNE BROWN

Direct Appeal from the Circuit Court for Dyer County
No. 08-CR-371   R. Lee Moore, Jr., Judge

No. W2009-01742-CCA-R3-CD  - Filed March 12, 2010

The Defendant-Appellant, Michael Dewayne Brown, was convicted by a Dyer County jury of three counts of sale of cocaine under 0.5 grams, a Class C felony. For each count, he received an eight-year sentence in the Tennessee Department of Correction, with the sentences to be served concurrently. Brown was also assessed a $2,000 fine for each conviction; however, the fine was suspended for counts two and three. On appeal, Brown claims the evidence was insufficient to support his convictions.[1] Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee for the Defendant-Appellant, Michael Dewayne Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

---

[1]The "Issues Presented For Review" section of Brown's brief states the issue as "Whether or not a trial judge who also sits as a member of the drug court team should hear a violation of probation after the defendant has been discharged from the drug court program." Because this issue is not briefed or addressed in any other way within Brown's brief, we presume it was submitted in error. In so much as Brown intended for us to review this issue, it is waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

**Facts**. The charges in this case resulted from three undercover drug purchases that occurred on May 5, 19, and 20 in 2008. Officer Shane Anderson of the Dyersburg Police Department assisted with all three undercover drug purchases. On May 5, the day of the first drug purchase, Officer Anderson was approached by a confidential informant ("the informant"). The informant claimed he was contacted by a drug dealer at a gas station. Officer Anderson said that the informant and his vehicle were searched prior to the May 5 drug purchase. Following the purchase, Officer Anderson recovered the crack cocaine from the informant. Regarding the second purchase on May 19, Officer Anderson said he watched the informant walk to the car wash and speak with Brown. In all other respects, Officer Anderson corroborated Sergeant Todd Thayer's testimony regarding the drug purchases on May 19 and 20. However, Officer Anderson acknowledged that he did not witness the drug exchanges.

Investigator Chris Gorman of the Dyer County Sheriff's office testified that he worked with Officer Anderson on the May 5 drug purchase. The purchase occurred at an apartment complex. Beforehand, Investigator Gorman and Officer Anderson searched the informant and his vehicle for money and contraband. Investigator Gorman believed the informant wore an audio transmitter during the purchase. Investigator Gorman confirmed that on May 5, the informant returned from the apartment complex with crack cocaine.

Sergeant Todd Thayer of the Dyersburg Police Department assisted with the drug purchases on May 19 and 20. He worked in the field of illegal narcotics for eight years and had training in the detection of illegal drugs. For both purchases, Sergeant Thayer confirmed that he worked with Officer Shane Anderson and the informant. Sergeant Thayer said he worked previously with the informant on fifteen to twenty undercover drug purchases.

On May 19, the second drug purchase, Sergeant Thayer and Officer Anderson met with the informant before the undercover drug purchase. They searched the informant and his vehicle for drugs, money, and weapons. Sergeant Thayer said an audio transmitter was attached to the informant. The audio transmitter acted in conjunction with a receiver in the patrol vehicle; which allowed the officers to "hear everything that [was] going on." A video recorder was also placed on the informant. Sergeant Thayer said the informant was given the money needed to make the purchase. According to Sergeant Thayer, the informant provided the following information about his contact with Brown:

> [The informant] told us he could buy crack cocaine from Mr. Brown. He referred to him as another name at that time. At that time, we didn't know Mr. Brown's real name. [The informant] had provided a telephone number, a cell number, and he had called Mr. Brown and Mr. Brown agreed to meet him at the car wash on Sampson and sell him $60.00 worth of crack cocaine.

After the phone call was made, Sergeant Thayer and Investigator Anderson went to the car wash and set up video equipment. Sergeant Thayer said he taped the drug purchase from across the street using a camcorder. At trial, he described what transpired:

> [The informant] got to the car wash. He pulled up in a car wash bay. He got out of his car. Mr. Brown was standing on Baxter Street at the top of the hill. [The informant] walked up to Michael Brown and gave him the $60.00 buy money, and at that time, Michael Brown said, "It's down there at the car wash in the corner."

Sergeant Thayer testified that the informant retrieved the drugs, got into his car, and drove to an arranged meeting point where the crack cocaine was recovered. The video recording from camcorder was played to the jury. The jury was also shown footage from the video recorder attached to the informant. Lastly, the jury was presented with pictures of Brown walking up the hill next to the car wash.

Sergeant Thayer testified that on May 20, the third drug purchase, he and Investigator Anderson met with the informant again. Sergeant Thayer stated:

> It was set up pretty much the way it was on the pervious day. The [informant] called the same phone number . . . to get a[]hold of Mr. Brown. Mr. Brown agreed to sell him $70.00 worth of crack cocaine and they were to meet at the Perry Vinson Apartments on Lake Road in Dyersburg.

The officers searched the informant and his vehicle beforehand and supplied him with seventy dollars. The informant was equipped with an audio transmitter and a video camera; however, Sergeant Thayer said, "The sun interfered with the camera so much that you can't see nothing." Sergeant Thayer testified that he met with the informant after the drug purchase at the apartment complex, and the informant turned over the crack cocaine.

Sergeant Thayer testified that he did not witness either drug transaction. He said the informant was paid one hundred dollars for each purchase. Sergeant Thayer did not promise the informant leniency on a pending probation violation. Sergeant Thayer said he did not know Brown's name until May 29, stating:

> [The informant] described the vehicle that Mr. Brown drove, and I had talked to another officer and described that vehicle and he said, "Well, that sounds like Michael Brown's vehicle," so I then got a photo Michael Brown from his Driver's License photo, and on May the 29th, which was nine days after the last deal, I just showed [the informant] . . . the photo and asked him, "Who is

this?" and he said, "Well that's . . . Antonio."  I said, "How do you know Antonio?"  He said, "We've bought from him three times."

Sergeant Thayer said Brown referred to himself as Antonio when he first spoke with the informant.

The confidential informant testified that he assisted the Dyersburg Police Department with the undercover drug purchases on May 5, 19, and 20.  The informant confirmed that prior to each purchase, the officers searched his vehicle and his person, and he was equipped with video and audio equipment.  The informant first encountered Brown while at a gas station.  The informant recognized Brown from around the area, but they had never met. Brown told the informant that if he "needed something to holler at him."  The informant took this to mean that Brown was willing to sell him drugs.  At the gas station, the informant also received a phone number from Brown.  The informant subsequently called Sergeant Thayer to arrange an undercover drug purchase.

On May 5, the informant called Brown and said he wanted to purchase crack cocaine. At Brown's direction, the informant drove to an apartment complex.  The informant said he "pulled up beside [Brown] and he handed me the dope and I handed him the money and drove off." The informant said Brown was in an old, gray Buick that had expensive rims.

The informant made another drug purchase from Brown on May 19.  He stated:

[Brown] told me to meet him at the car wash, and I pulled up to the car wash, parked my car in a stall, and he was up the hill and I walked up the hill and gave him money and told him he was standing in poison oak, and he told me to go back and it was down on the ground, so I went and got the dope and left.

The informant retrieved the crack cocaine and placed it in the console of his car.  He drove away from the car wash and took the crack cocaine to the officers.

On May 20, the informant said he called Brown again to purchase crack cocaine.  He met with the officers beforehand, and they searched him and his vehicle.  The officers also provided him with a video recorder.  The informant then drove to an apartment complex where he met with Brown.  The informant stated, "We talked and I gave him the money, and he told me it was by the mailbox."  The informant walked to the mailbox area and retrieved the crack cocaine.  He drove away from the apartment complex and gave the crack cocaine to the police.  On a later date, the informant said the officers asked him if he could identify someone in a photo.  The informant told the officers he recognized the individual.  At trial, the informant said the individual in the photo was Brown.

-4-

The informant testified that at the time of the drug purchases he was on probation for a drug-related offense. He said he was not offered leniency as to a pending probation violation. The informant admitted that he was a drug user at the time of the drug purchases. He was paid one hundred dollars for each drug purchase. The defense asked the informant if he used any of the money from the hundred-dollar payments to purchase crack cocaine for himself. He responded, "I imagine so[.]" The informant stated that during the May 5 drug purchase, he met with Brown in person for about five seconds. On May 19 and 20, the informant said their face-to-face interaction lasted about one minute. He did not recall purchasing drugs from Brown before May 5.

A technician for the Tennessee Bureau of Investigation Crime Laboratory testified that she analyzed the substances recovered from the May 5, 19, and 20 drug purchases. The trial court found that she qualified as an expert in drug identification. The technician determined that all three substances contained cocaine weighing less than 0.5 grams.

Brown testified and denied selling crack cocaine to the informant. He said that prior to trial, he saw the informant once before on May 19. He stated:

> I was walking from my auntie's house. It was hot, you know, and then I realized that I didn't have a lot of shade, you know, so I just backed up and smoked my last cigarette. A dude walked up, told me I was in poison oak, and I've got sensitive skin, so I took heed to the conversation.

Brown denied selling drugs to anyone on May 5, 19, and 20. He testified that he did not own a phone. Brown said he drove a gray Buick LeSabre, but he claimed it did not have "big fancy rims." He denied ever using the alias of Antonio.

On cross-examination, the State questioned Brown regarding the video from May 19. The State asked, "So that was you at the car wash on Sampson Street, walking around up the hill and back toward the leaves or poison oak or whatever it was?" Brown acknowledged that he was the individual in the video. He did not recall telling the informant, "'It's over there wrapped up in tissue.'" Brown testified that their conversation was limited to discussing the poisonous oak and his sensitive skin. Brown said his vehicle has fifteen-inch chrome rims.

Following the proof at trial, the jury convicted Brown of three counts of sale of cocaine under 0.5 grams, a Class C felony. Brown filed a motion for new trial, alleging the evidence was insufficient to support his convictions. This motion was denied. Brown subsequently filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence**. Brown claims the evidence was insufficient to support his convictions. In particular, he argues the evidence did not identify him as the perpetrator who sold crack cocaine to the informant. In response, the State claims a rational jury could have found Brown guilty of three counts of sale of cocaine under 0.5 grams. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). However, "[a] verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility." State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Sullivan v. State, 513 S.W.2d 152, 154 (Tenn. 1974)).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App.,

at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). Therefore, the State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). This court stated that the identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)).

Brown was convicted under Tennessee Code Annotated section 39-17-417, which states in relevant part:

> (a) It is an offense for a defendant to knowingly:
>
> > (3) Sell a controlled substance[.]
>
> (c) A violation of subsection (a) with respect to:
>
> > (2)(A) Any other Schedule II controlled substance, including cocaine or methamphetamine in an amount of less than point five (.5) grams, is a Class C felony and, in addition, may be fined not more than one hundred thousand dollars ($100,000)[.] . . .

Upon our review, the evidence, when examined in the light most favorable to the State, was sufficient to support the three convictions. Count one of the indictment addresses the undercover drug purchase on May 5, 2008. The informant testified that some time before May 5, he was approached by Brown at a gas station. According to the informant, Brown provided a phone number and stated that if the informant "needed something to holler at him." The informant testified that he called Brown on May 5 and arranged to purchase crack cocaine. Brown told him to go to an apartment complex. Officer Anderson and Investigator Gorman testified that they met with the informant before the drug purchase. They searched the informant and his vehicle for drugs, money, and weapons. The informant then drove to the apartment complex. The informant said he "pulled up beside [Brown] and [Brown] handed me the dope and I handed him the money and drove off." Both Officer Anderson and Investigator Gorman testified that the informant turned over the crack cocaine following the undercover drug purchase. The technician for the Tennessee Bureau of Investigation Crime

Laboratory testified that the substance recovered from the May 5 drug purchase contained cocaine weighing less than 0.5 grams. Based on this evidence, a rational jury could find that on May 5, Brown knowingly sold the informant a controlled substance that weighed less than 0.5 grams.

Count two of the indictment addressed the May 19 undercover drug purchase. The informant testified that he again called Brown and expressed his desire to purchase crack cocaine. The informant said he was told to go to a car wash. The informant met with Sergeant Thayer and Officer Anderson prior to the purchase. Sergeant Thayer testified that the informant and his vehicle were again searched. The informant was then equipped with a video recorder and an audio transmitter. The informant testified that he drove to the car wash, parked his vehicle, and met with Brown on a nearby hill. The informant said he paid Brown and was told where to retrieve the crack cocaine. The informant testified that he found the cocaine where Brown said it would be. The informant stated that he placed the cocaine in the console of his car and drove to an arranged meeting point where he met Sergeant Thayer and Officer Anderson. Sergeant Thayer testified that he recovered the crack cocaine from the informant. Sergeant Thayer said he recorded the drug purchase across the street from the car wash using a camcorder. This video recording was shown to the jury. Brown admitted to being at the car wash on May 19 and speaking with the informant. The technician for the Tennessee Bureau of Investigation Crime Laboratory testified that the substance recovered from the May 19 drug purchase contained cocaine weighing less than 0.5 grams. This evidence, when taken in the light most favorable to the State, supports the jury's finding of guilt.

Lastly, count three relates to the May 20 drug purchase. The informant said he called Brown for a third time, and they arranged to meet at an apartment complex. The informant testified that he first met with Officer Anderson and Investigator Gorman, and they again searched him and his vehicle. The informant testified that he drove to the apartment complex where he met with Brown. The informant stated, "We talked and I gave him the money, and he told me it was by the mailbox." The informant said he went to the mailbox area and retrieved the crack cocaine. He drove away from the apartment complex and gave the cocaine to the officers. Investigator Gorman testified that the informant returned from the apartment complex with crack cocaine. The technician for the Tennessee Bureau of Investigation Crime Laboratory testified that the substance recovered from the May 20 drug purchase contained cocaine weighing less than 0.5 grams. Based on this evidence, a rational jury could find that on May 20, Brown knowingly sold the informant a controlled substance that weighed less than 0.5 grams.

Brown argues that the evidence did not sufficiently identify him as the perpetrator. He claims several facts negate the element of identify. First, Brown points to the fact that

neither the informant or the officers knew Brown's real name when the undercover drug purchases occurred. He also refers to the short duration of the drug purchases, the informant's questionable credibility, and the fact that the officers never viewed the exchange of drugs or money. This court has stated the identification of the defendant as the perpetrator is a question of fact for the jury. See Strickland, 885 S.W.2d at 87 (citing Crawford, 635 S.W.2d at 705). All factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. Bland, 958 S.W.2d at 659. Here, the informant presented direct testimony that Brown was the perpetrator who sold him crack cocaine three times. The jury found that the informant was more credible than Brown, and we will not override this determination. Additionally, nothing in the record supports Brown's claim that Sergeant Thayer improperly "suggested" that Brown was the drug dealer. As addressed above, a rational jury could find the evidence was sufficient to support Brown's convictions. Therefore, he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.


_____
CAMILLE R. McMULLEN, JUDGE