IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 30, 2010

**STATE OF TENNESSEE. v. DWIGHT J. SHANKLE**

**Direct Appeal from the Circuit Court for McMinn County**
**No. 08-267     Carroll L. Ross, Judge**

**No. E2009-01768-CCA-R3-CD - Filed June 7, 2010**

The Defendant-Appellant, Dwight Shankle, was convicted by a McMinn County jury of manufacture of methamphetamine under 0.5 grams, a Class C felony. He was sentenced as a multiple offender to eight years in the Tennessee Department of Correction and assessed a $25,000 fine. On appeal, he claims the insufficiency of the evidence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. McMurray Johnson, Athens, Tennessee, for the Defendant-Appellant, Dwight J. Shankel.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Robert S. Bebb, District Attorney General; and Andrew Freiberg, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Facts**. Deputy Andy Moser of the McMinn County Sheriff's Office testified that he was a member of the Tennessee Methamphetamine Task Force. He received training in the identification of methamphetamine labs, and he was certified as a methamphetamine technician. Deputy Moser testified that the following components are needed to manufacture methamphetamine: pseudoephedrine, lithium batteries, muriatic acid, lye, solvents, salt, iodine, and fertilizer or anhydrous ammonium. He provided a brief overview of two common methods of producing methamphetamine: the red phosphorus method and the Nazi/Birch method.

On March 20, 2008, Deputy Moser went to the home of Brittany Best to investigate a suspected methamphetamine lab. He was accompanied by Deputy Justin Lowe and an agent from the Department of Children's Services. Deputy Moser knocked on the front door and spoke with Best. He informed Best of the reason for their visit, and she signed a form consenting to the search of her home. Deputy Moser entered the home and searched the top floor. He then went downstairs and found Shankle sitting in the basement. Shankle was the boyfriend of Best, and he appeared to be staying in the master bedroom. Best's two children also lived in the home, but they were not present during the search. Deputy Moser testified that Shankle was taken into custody after it was determined that there was a warrant for his arrest.

The search of the basement revealed components used to manufacture methamphetamine. Deputy Moser said the basement had a pervasive chemical odor. Based on this odor, he believed methamphetamine had recently been cooked there. Deputy Moser explained that the lab was not active. He contacted the Methamphetamine Task Force for the purpose of dismantling and processing the volatile lab.

While at Best's home, Deputy Moser took a written inventory of the items found in the basement. He discovered two "baggies" with white powder residue. Deputy Moser also found three solvents, a lye, a catalyst, multiple heat sources, tubing, five funnels, glassware, burnt aluminum foil, a red ketchup bottle with tubing attached, a scale, a pill crusher, wet coffee filters, a Powerade bottle containing ammonium nitrate, a pickle jar partly full of rock salt, and various items used to consume methamphetamine and other drugs. Deputy Moser stated that the items in the basement included everything necessary to manufacture methamphetamine. He testified that there was a burn pile outside of the basement. In the burn pile, he found a battery with the lithium strips removed. He said that lithium is a precursor for making methamphetamine. Deputy Moser said methamphetamine manufacturers sometimes burn the components and byproducts. On cross-examination, Deputy Moser testified that when he first saw Shankle in the basement, Shankle was sitting at a desk. At that time, Shankle was not in physical possession of methamphetamine or "meth-making" material. Deputy Moser said the two bags with white powder residue were found on a desk next to where Shankle was sitting.

Ashley Cummings testified that she worked as a forensic scientist for the Tennessee Bureau of Investigation Crime Lab. The trial court found that she qualified as an expert in the forensic identification of controlled substances. Cummings was given two plastic bags containing white powder residue. She tested the residue in one of the bags and determined that it contained methamphetamine. Cummings included this finding in a report that was submitted to the police.

Deputy Justin Lowe testified that he served as a drug enforcement officer for the McMinn County Sheriff's Department. He went to Best's home after being contacted by an agent from the Department of Children's Services. The agent had received complaints that methamphetamine was being manufactured at Best's home while children were present. Deputy Lowe searched Best's home with the agent and Deputy Moser. Deputy Lowe corroborated Deputy Moser's testimony that Shankle was found in the basement where there was a methamphetamine lab. Upstairs, Deputy Lowe found a small plastic bag containing a white powdery substance. He said this substance was later identified by the Tennessee Bureau of Investigation as methamphetamine. Deputy Lowe found the plastic bag in the living room area in "a little container that goes on a key chain."

Deputy Lowe testified that he spoke with Shankle outside after he was taken into custody. At this time, Deputy Lowe was not sure that there was a methamphetamine lab in the basement. Shankle admitted to owning the "stuff" in the basement. He also stated that Best "had no involvement" and that the cooking process did not occur while the children were present. Deputy Lowe later interviewed Shankle at the McMinn County Justice Center. Shankle provided a statement that was written down by Deputy Lowe. The statement read: "The stuff that was found in the basement, I take full responsibility for. Brittany [Best] had no idea it was there. There was no methamphetamine cooked in my or her presence at the house."

Deputy Lowe testified that he walked through the upstairs part of Best's home. He found men's clothes in the master bedroom. According to Deputy Lowe, Shankle said he had been staying at Best's home. Deputy Lowe said various drug paraphernalia was found in the basement, including straws, burnt aluminum foil, and plastic bags with white powder residue.

Michael Bleakley testified that he was forensic scientist for the Tennessee Bureau of Investigation. The trial court determined that he qualified as an expert in forensic drug identification. He analyzed a small plastic bag with a white powder substance. After performing two tests, he determined that the bag contained 0.7 grams of methamphetamine. This finding was included in a report that was submitted to the police.

Brittany Best testified that she was in a relationship with Shankle. She recalled signing the consent form that allowed the deputies to search her home. Best claimed she told the deputies that Shankle was in the basement. She denied stating that Shankle manufactured methamphetamine in her basement. Best testified that she was not aware that methamphetamine was being manufactured in her home. She said her brother had recently brought a "plastic bottle with components" into her home. Best spoke to him in the basement the night before Shankle's arrest. Best's brother left in the morning, but she said the plastic bottle remained in the basement. Best testified that her "promotion charge" was reduced to

a misdemeanor offense because she agreed to testify in another case. She denied having the charge reduced because she agreed to testify against Shankle.

On cross-examination, Best testified that she lived at her home with her two children, her brother, and occasionally her brother's girlfriend. She said the night before Shankle's arrest, her brother came to her home just before midnight. He "was carrying a little black attache bag, and he pulled out a plastic bottle that was drained of fluid and . . . looked like gravel." Best said Shankle was already asleep when her brother came over. Best spoke to her brother for about thirty minutes in the basement before she went to bed. She knew the materials that her brother brought to her home were methamphetamine -related, and she told him to get rid of it. Best testified that none of the items found in her basement belonged to Shankle.

Deputy Justin Lowe testified that he spoke with Best at her home on the day of Shankle's arrest. He confronted her about the methamphetamine lab in her basement. Deputy Lowe said Best admitted that Shankle manufactured methamphetamine in her basement. Consequently, Best was charged with the promotion of methamphetamine. Deputy Lowe said this charge was reduced, and Best pled guilty to several misdemeanor offenses. The promotion charge was reduced partly because Best agreed to testify against Shankle. Deputy Lowe said Best never mentioned anything about her brother. When the police first arrived at her home, she claimed to be home alone. Based on this statement, Deputy Lowe searched the top floor of Best's home for five minutes, rather than proceeding directly to the basement.

Shankle testified that he dated Best for three weeks before his arrest. He claimed he stayed with her once or twice a week. Shankle acknowledged that his criminal record included convictions for robbery, theft, and prescription fraud. Shankle testified that on the day of his arrest, he was taking a nap. Best woke him up, and she said police officers were outside. Shankle knew there was a warrant for his arrest, so he went to the basement. He also remembered that he smoked part of a marijuana cigarette in the basement earlier that day, and he was worried that it might still be down there. Shankle was in the basement when the police came downstairs. After giving his name, he was placed in handcuffs and taken outside. He told the police, "'You know, there might be some stuff in there that, you know, it's probably mine.'" Shankle explained that the basement contained lots of tools, and he was worried that some of them might be stolen. He did not believe there was a methamphetamine lab in the basement, and the police had not mentioned anything about methamphetamine before he made the statement about owning the "stuff." Shankle denied that he manufactured methamphetamine.

On cross-examination, the State addressed Shankle's criminal record in further detail. Shankle admitted that he was convicted of theft and two counts of forgery in 2001, robbery in 2002, prescription fraud in 2006, theft over five hundred dollars in 2007, and prescription fraud in 2008. He stated that he was not aware of the methamphetamine lab in Best's basement, and he failed to detect its chemical odor. Shankle also did not notice the wet coffee filters in the basement. He denied owning any of the items found in the basement.

Following the proof at trial, the jury convicted Shankle of manufacturing under 0.5 grams of methamphetamine. He was sentenced as a multiple offender to eight years in the Tennessee Department of Correction. The trial court found that several enhancement factors were applicable in sentencing. Shankle filed a motion for new trial, challenging the sufficiency of the evidence. The trial court denied this motion. He then filed a timely notice of appeal.

## ANALYSIS

**Sufficiency of the Evidence**. Shankle claims the evidence was insufficient to support his conviction for manufacturing under 0.5 grams of methamphetamine. He argues that the evidence did not identify him as the perpetrator who manufactured methamphetamine in Best's basement. As support, Shankle asserts:

> he had no possessory interest in the house where the methamphetamine residue or the methamphetamine-making materials were discovered, no such items were found on his person, and no proof was presented that such items were in his actual or constructive possession or that he was knowingly involved in any preparation, modification, or extraction process to manufacture methamphetamine.

The State claims a rational jury could have found that Shankle committed the offense beyond a reasonable doubt.

**Standard of Review**. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by

the trier of fact of guilt beyond a reasonable doubt." A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing Tuggle, 639 S.W.2d at 914).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The State may prove the perpetrator's identity using only circumstantial evidence. State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002)). However, where the defendant is convicted based on only circumstantial evidence, the evidence must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). The jury must determine the weight given to circumstantial evidence. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). This court may not "substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact." Carruthers, 35 S.W.3d at 557 (citing Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)). However, "'[a] verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility.'" State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Sullivan v. State, 513 S.W.2d 152, 154 (Tenn. 1974)).

Shankle was charged with manufacturing under 0.5 grams of methamphetamine. This offense is defined under Tennessee Code Annotated section 39-17-417(a), which states, "It is an offense for a defendant to knowingly: (1) Manufacture a controlled substance[.]" See also T.C.A. § 39-17-417(c)(2)(A) ("Any other Schedule II controlled substance, including cocaine or methamphetamine in an amount of less than point five (.5) grams, is a Class C felony[.]"). Section 39-17-402(15) defines the term "manufacture" as follows:

"Manufacture" means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use or the preparation, compounding, packaging, or labeling of a controlled substance by:

(A) A practitioner as an incident to administering or dispensing a controlled substance in the course of professional practice; or

(B) A practitioner, or an authorized agent under the practitioner's supervision, for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale[.]

The evidence, when considered in the light most favorable to the State, supports the jury's verdict. Deputy Moser testified that he searched the basement in Best's home and found all of the components needed to manufacture methamphetamine. Several bags were found with white powder residue, and two forensic scientists determined that the residue contained methamphetamine. Deputy Moser found a burn pile outside that contained a byproduct of the manufacturing process. Deputy Moser said he was trained to identify methamphetamine labs, and he concluded that methamphetamine was recently manufactured in the basement. Deputy Lowe also testified that the basement was a methamphetamine lab.

The crux of Shankle's argument is that there was insufficient evidence linking Shankle to the methamphetamine lab in Best's basement. This argument is not, however, supported by the testimony at trial. Deputy Lowe questioned Best on the day of Shankle's arrest. According to Deputy Lowe, Best said she knew Shankle manufactured methamphetamine in her basement. Shankle testified that he was in a relationship with Best, and he stayed at her home once or twice a week. Deputy Lowe testified that he searched Best's bedroom, and Shankle appeared to be living there. Shankle admitted to owning the "stuff" in the basement soon after being taken into custody. Deputy Lowe testified that

Shankle also stated that the cooking process did not occur while Best's children were present, and that Best "had no involvement." In convicting Shankle, the jury discredited the testimony of Best and Shankle who both denied any knowledge of the methamphetamine lab. The jury determined that Deputy Moser and Deputy Lowe were credible witnesses, and we will not override that determination. Their testimony provided sufficient evidence identifying Shankle as the perpetrator. We hold that a rational jury could have found Shankle guilty of manufacturing under 0.5 grams of methamphetamine. Accordingly, Shankle is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE