IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2010

**STATE OF TENNESSEE v. HENRY SPRINGER**

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-490    Roger Page, Judge**

_____

**No. W2010-00787-CCA-R3-CD  - Filed January 18, 2011**

_____

The Defendant-Appellant, Henry Springer, was convicted by a Madison County jury of aggravated robbery, a Class B felony. He was sentenced as a standard offender to twelve years in the Tennessee Department of Correction. On appeal, Springer claims the evidence was insufficient because it did not identify him as the perpetrator. Upon review, we affirm the judgment of the trial court.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Clifford K. McGown, Jr., (on appeal), Waverly, Tennessee; George M. Googe, District Public Defender; Paul Meyers, Assistant Public Defender, (at trial), Jackson, Tennessee, for the Defendant-Appellant, Henry Springer.

Robert E. Cooper, Jr., Attorney General and Reporter;  Brian C. Johnson, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jim Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial**. Janice Flagg testified that she was a cashier for a convenience store. On the night of February 16, 2009, she was working with another cashier named Shannon Ndegwa.

---

[1]We note that the judgment form incorrectly lists the offense date as February 16, 2010. The indictment alleges that the offense occurred on February 18, 2009, and the testimony at trial indicated that the offense occurred on the night of February 16, 2009 or the earlier morning hours of February 17, 2009. The judgment form should be corrected to reflect that the offense occurred on February 16, 2009.

Flagg was stocking coolers when she heard Ndegwa exclaim, "'Oh, my God, Janice.'" Flagg saw two men enter the store, one of which wore a hood. She said the hooded man pointed a gun at her and demanded that she open the register. Flagg complied with this demand, and the robber grabbed the money from the register. The robbers then threatened to kill the cashiers if they did not find more money. Flagg testified that she was afraid that she was going to die. She stated that the other robber forced Ndegwa to open the lottery register. Flagg saw an extra register drawer under the counter which she handed to the robbers. After the robbers collected the money, they left the store. Flagg estimated that the robbers stole over a thousand dollars. Flagg gave a statement to the police. She was unable to identify the robbers. Flagg described the gun used during the robbery as black with a cylinder.

On cross-examination, Flagg approximated that the robbery lasted twenty minutes. She recalled that the robber who possessed the gun wore a toboggan over his face and had a hooded jacket. The jacket had fur around the hood. Flagg did not remember seeing Springer earlier that evening. She explained that she was in the kitchen cooking that night. On redirect examination, Flagg said the robber's toboggan covered only part of his face. She testified that the robber's eyes were visible.

Ndegwa gave the following account of what transpired at the store on the night of February 16, 2009:

> Well, it was around something to twelve midnight, and I'd walked out on the floor. Janice had called me out on the floor to the Pepsi machine and–because it was empty and she was, you know, kind of fussing about it.
>
> And I went out there and looked and I was like, "Yeah, they didn't do anything on the previous shift."
>
> Well, out of the corner of my eye I could kind of see somebody on the sidewalk but I hadn't seen any cars pull up. So I watched. There were two guys. They ran across the front of the store and came in through the entrance, and they . . . were looking to see where we were at because we were out on the floor.
>
> They came around. . . . One I know had the gun. He pointed the gun at us and . . . told me to get–get down to the floor. And then he asked us–he wanted us to get down to the floor. And then he said, "Get back up," like he didn't know what he wanted us to do.

Well, then, he had me lay down in front of the Slushy machine, and lay down on the floor. And he took Janice around with the gun and pointed to her to the register, to the first register. Okay? And she gave him everything out of that register.

Well, I could hear–I'm laying on the floor. I could hear the drawer slamming and all the change, you know, out of the drawer. And he was like, "Y'all bitches better get me some more money or I'm going to kill both y'all."

So that's when they got me off the floor. They said, "You better get me some more money."

So I went around there and I gave them the lottery register money and I gave them the change money, which was about three hundred and–maybe two hundred and something in the lottery and.[sic] We'd give–we'd already given them the main register. I gave them the–even the roll of coins, the quarters, nickels, dimes, pennies. I gave them those.

And once I done all that he just piled it up on him or whatever, and they run on out the door or whatever.

And the other–The little short one, him, he was saying, "Come on, man, come on." He was the one that was doing all the, you know–telling what to do, you know, in the robbery, telling the other guy what he wanted him to [sic] and all that. But that was basically it.

Ndegwa testified that during the robbery, she was placed in fear of imminent bodily injury or death. Based on this fear, she was forced to give the money to the robbers. Ndegwa described the robber's gun as having a round cylinder. She identified Springer as one of robbers. Ndegwa said he came into the store about an hour before the robbery and purchased malt liquor. She had a conversation with Springer during which he asked if she had a boyfriend. She said Flagg was not present during this conversation because she was in the kitchen. Ndegwa noticed that Springer had a "cockeye."

Ndegwa testified that she was able to identify Springer when he returned to rob the store. She said he wore the same clothes. Ndegwa also recognized his voice and his "unusual" eyes. She was handed a photo taken from the store's video surveillance system. Ndegwa said the photo showed her standing behind the register selling malt liquor to Springer. She testified that Springer wore a colored tee-shirt with a white collar, an undershirt, and a "jacket with the furry stuff." Ndegwa was presented with another photo

taken during the robbery. She said the photo showed Springer wearing the same clothes as before, except for a different jacket. Springer also had on a toboggan that covered his face from the nose down. Ndegwa testified that the toboggan did not cover his eyes. Ndegwa was shown a picture of a revolver. She said the revolver was consistent with the gun used by Springer during the robbery.

On cross-examination, Ndegwa said she gave a statement to Investigator Michael Parson on the night of the robbery. She did not mention that the culprit was in the store prior to the robbery. Ndegwa also failed to mention that the culprit was cockeyed. She explained that she was hysterical at the time. Ndegwa went to the police station on a later date and identified Springer from a photo lineup. She testified that the robbery lasted for two or three minutes. On redirect examination, Ndegwa said she met with Investigator Alberto Colon a couple of days after the robbery. She was shown multiple photo lineups. She identified Springer as the individual who robbed her at gunpoint. Ndegwa estimated that close to a thousand dollars was taken during the robbery. The stolen money included pennies in bank rolls. Ndegwa testified that she was "absolutely sure" that Springer was one of the individuals who robbed the store.

Officer Rodney Anderson of the Jackson Police Department testified that he was on duty on February 17, 2009. He observed a green car that had several hubcaps missing. The car had an orange throw or cap under the back window. The car matched the description of a car reportedly involved in a robbery. Officer Anderson stopped the car and identified the passengers. He said three males were in the car. Officer Anderson then followed the vehicle until it parked at 44 Fox Street.

Investigator Michael Parson of the Jackson Police Department testified that he responded to the scene of the robbery. He took statements, and he collected the surveillance video from the store's video system. Investigator Parson recorded the data from the surveillance video onto four compact disks. He said the video contained scenes from different angles inside and outside of the store.

Sergeant Alberto Colon of the Jackson Police Department was called to testify about the video. He was shown footage from the video, which was taken before the robbery. Sergeant Colon identified Springer as entering the store and purchasing beer. He found similarities between the clothes Springer wore while purchasing beer and the clothes worn by one of the robbers. Sergeant Colon testified that both Springer and the robber wore a greenish-blue shirt with a white collar and a white undershirt. Additionally, they both had facial hair. Sergeant Colon was shown footage during the robbery. He said one of the robbers wore a mask that left his eyes exposed. Sergeant Colon was presented with a still

-4-

photo of the robbers entering the store. He stated that Springer wore a different jacket, but had the same pants and shirt.

Investigator Parson was recalled as a witness to complete his direct examination. He said officers were given information about the car used during the robbery. Investigator Parson was informed that a car matching the description was found at 44 Fox Street. He went to the residence and found a green car with no hubcaps. The car also had an orange baseball cap on its back deck. Investigator Parson said the store's surveillance video showed a green car at the store's parking lot. Investigator Parson testified that he obtained a search warrant for the residence at 44 Fox Street. In executing the search warrant, officers found a darker-colored revolver in the backyard. The revolver was discovered in a bag in a doghouse. Investigator Parson explained that revolvers have a cylinder which holds the bullets. During the search, the police also retrieved a sock containing cash and a roll of pennies. Additionally, the police found a brown toboggan at 44 Fox Street, which was consistent with the one seen in the photos from the store.

On cross-examination, Investigator Parson testified that the residence at 44 Fox Street belonged to someone named Mrs. Woodson. He was unsure of who lived at the residence. Investigator Parson said the evidence retrieved at the house was not found in Springer's possession.

Sergeant Colon was again called to testify. He said he worked for the Violent Crimes Unit. He went to the scene of the robbery. Sergeant Colon downloaded a copy of the surveillance video from the convenience store. He said the video showed the robbery from different angles. Sergeant Colon was shown three photographs from the convenience store's parking lot. He stated that the photos showed a car pulling into the parking lot. Sergeant Colon testified that Springer got out of the car before he purchased the malt liquor. He said this car was later found at 44 Fox Street. Sergeant Colon was shown another photo taken from inside the convenience store. He said the photo showed Springer talking to Ndegwa. Sergeant Colon testified that Springer wore a toboggan, with a Carhart emblem on the side. He stated that the toboggan was consistent with the one later found at 44 Fox Street. Sergeant Colon testified that the gun described by the victims was similar to the one found at 44 Fox Street.

Following Sergeant Colon's testimony, the State rested. Springer waived his right to testify, and the defense did not call any other witnesses.

**ANALYSIS**

Springer claims the evidence did not support his conviction for aggravated robbery.

He sets forth the following argument:

> While Ms. [Ndegwa] testified that Mr. Springer was one of the two robbers, and that she picked him out of a photo lineup, Ms. [Ndegwa] failed to initially identify Mr. Springer as the perpetrator of the robbery. This inconsistency, coupled with Ms. Flagg's inability to identify either of the individuals that robbed her should create sufficient reasonable doubt such that Mr. Springer's [conviction] for aggravated robbery should be reversed.

The State argues that a rational juror could have concluded that the elements of offense were proven beyond a reasonable doubt. In particular, the State contends that there was sufficient evidence identifying Springer as the perpetrator. Upon review, we agree with the State.

**Standard of Review**. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and

the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing Tuggle, 639 S.W.2d at 914).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The State may prove the perpetrator's identity using only circumstantial evidence. State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002)). However, where the defendant is convicted based on only circumstantial evidence, the evidence must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). The jury must determine the weight given to circumstantial evidence. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). This court may not "substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact." Carruthers, 35 S.W.3d at 557 (citing Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)). However, "'[a] verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility.'" State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Sullivan v. State, 513 S.W.2d 152, 154 (Tenn. 1974)).

Aggravated robbery, as relevant here, is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1) (2009). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a) (2009).

In this case, sufficient evidence was presented that Springer committed aggravated robbery. The two employees of the store, Flagg and Ndegwa, testified that two men entered the store and stole approximately a thousand dollars. Both employees stated that the theft was accomplished with a gun that had a cylinder. Flagg testified that one of the robbers pointed the gun at her and demanded that she open the main register. Ndegwa corroborated this testimony. Ndegwa claimed she was also forced to open a register, which contained cash and rolls of coins. Both employees stated that the robbers repeatedly threatened to kill them if they did not produce more money than was contained in the main register. Both employees testified that they were placed in fear of imminent bodily injury or death.

Springer does not contest the fact that the aggravated robbery occurred. He claims, however, that the evidence did not identify him as the perpetrator. This claim is not

supported by the record. Ndegwa testified that she was "absolutely sure" that Springer was one of the robbers. She even specified that Springer was the robber who possessed the gun. Ndegwa identified Springer from a photo lineup several days after the robbery. She claimed she was able to identify Springer because he was in the store about an hour before the robbery. Ndegwa stated that she had a conversation with Springer, and she recalled that he purchased malt liquor. She said Springer wore some of the same clothes when he returned to rob the store. Ndegwa also recognized his voice and his "unusual" eyes, which were exposed despite the presence of a mask. The record includes several photos that were taken from the store's video surveillance system. Ndegwa stated that one of the photos showed Springer purchasing the malt liquor. From the photos, Sergeant Colon also identified Springer as being present at the store shortly before the robbery. Furthermore, Investigator Parson testified that the store's surveillance video showed Springer getting out of a green car before he purchased the malt liquor. This green car was later found at the residence on 44 Fox Street. Investigator Parson testified that the ensuing search of that residence uncovered a dark-colored revolver and a sock containing cash and a roll of pennies. The police also found a brown toboggan, which was consistent with the one worn by Springer at the store.

We acknowledge Springer's argument about Flagg's failure to identify Springer as the robber. We also recognize that Ndegwa did not identify Springer until several days after the robbery. However, the evidence set forth in the previous paragraph sufficiently identified Springer as the perpetrator. Springer's claim regarding the sufficiency of the evidence is without merit. Accordingly, he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE